Between September 1989 and February 1990, the Mississippi State Auditor's Department (Auditor) conducted an investigatory audit on the City of Olive Branch, Mississippi (Olive Branch). The investigative audit of Olive Branch resulted in the Auditor taking exception for thirteen separate items of expenditures. The Auditor found no criminal liability, but made demand upon various city officials based upon the following expenditures: telephone service of a city employee, personal telephone calls, the Mayor's travel reimbursements, travel reimbursements by the alderman and city employees, gasoline credit card payments, flower purchases, travel for William Rose, payments made to the Holiday Inn Conference Center, certain petty cash transactions, miscellaneous dinner expenses, 53rd checks, and Volunteer Appreciation Dinners.
The Auditor later dropped his demand by $13.05 for personal telephone calls, the entire amount for the flowers, and his demand for accrued interest. The audit costs of $4,715.00 were also included in the demand. Olive Branch paid a total of $37,681.66 under protest, reserving the right to seek a declaratory judgment on the lawfulness of the excepted expenditures.
At the beginning of the trial Olive Branch announced that they would not contest their reimbursement on the personal telephone calls, travel expenses for the alderman and city employees, gasoline credit card payments, travel expenses incurred by William Rose, and payment to the Holiday Inn Conference Center. Thus, Olive Branch only sought reimbursement of $28,826.32, plus assessed costs, for the telephone service of the city employee, the miscellaneous dinners (police dinners and City Beautiful Commission dinners), the 53rd checks to employees, travel advances to the Mayor, and the expenses *Page 675 
incurred for the Volunteer Appreciation Dinners.
The Auditor took exception to expenditures of public funds for what Olive Branch called police dinners.[1] At trial the Mayor of Olive Branch, D.M. Nichols (Nichols) testified that the city devoted these dinners to important police business. Nichols testified that no city facility was large enough for the entire group to meet, so meeting elsewhere was necessary for the police force. Nichols further testified that the meeting was to review the employee handbook for the police department.
The first dinner was for $102.28. On this occasion a petty cash voucher was paid directly to Nichols. The other police dinner was for $80.28 and was paid directly by check to a restaurant named Earnies. Both payments were made without benefit of minute authorization by the City of Olive Branch.
The Auditor took exception to two lunches given to the City Beautiful Commission. The City Beautiful Commission is a volunteer organization, composed mainly of the Mayor's wife, and the wives of the Aldermen, which provides beautification services to the city. Their responsibilities included erecting and maintaining the entrance signs to the city, erecting and maintaining the entrance signs to the City Park, purchasing and erecting Christmas lighting and decorations throughout the city, and landscaping city property. One of the lunches that the Auditor took exception to was in December 1986 and the other was in December 1989. The lunches were held at the Summit Club in Memphis. The 1986 lunch amounted to $95.05. The 1989 lunch was for $79.79. Olive Branch reimbursed one lunch to Nichols and once the Summit Club was paid directly by the city. There were no minute entries concerning these lunches.
The Auditor took exception to two travel advances to Mayor Nichols. The city issued one warrant to Nichols in December 1985 for $500.00 and the other for $300.00 in December 1989. The advance of $300.00 was for a trip taken to research a sewer project the city was undertaking. The trip was to Houston and Tulsa. Two other city employees also went on this trip and their expenses were paid out of this advance. The $500.00 was advanced for a Mississippi Municipal Association Convention. The Auditor could find no documentation for these expenses. The Mayor testified at trial that the appropriate receipts and expense vouchers were filed with the city but were lost.
The next exception the Auditor took was to what Olive Branch called "53rd" checks. The city of Olive Branch's work year consists of fifty-two weeks, however, employees were given a 53rd check. Nichols testified that when employees were hired, they were told their annual salary would be divided into fifty-three checks. The Auditor introduced the city payroll records at trial which showed that employee salaries were divided into fifty-two checks with an extra check given around Christmas time.
The last exception taken by the Auditor was to dinners the city called "Volunteer Appreciation Dinners." These dinners were held during the months of December from 1985 through 1988. The city discontinued the dinners in December of 1989 when the Auditor questioned them. Olive Branch argued that the dinners were held to promote and publicize the City and to encourage the volunteers to continue their efforts in the coming year. They invited various dignitaries, including but not limited to, area state representatives, members of Congress, and businesspeople. The volunteers included the City Beautiful Commission, the volunteer fire department, volunteer ambulance drivers and EMTs, the Planning Commission, the Housing Authority, the Industrial Development Committee, reserve police officers, and the trustees of the Chain Public Library. Olive Branch invited the volunteers' spouses to attend also.
At trial Nichols testified that these dinners were held to bring favorable publicity to the city. There were no minute entries finding that these functions would encourage volunteers *Page 676 
or otherwise advertise resources of Olive Branch.
After the bench trial, Judge Gibbs entered his Order and Opinion on April 4, 1993. The judge sustained Olive Branch's protest with regard to one item of the Auditor's exception. This item related to the provision of basic monthly telephone service for a city employee. Judge Gibbs rejected the remainder of Olive Branch's protest and entered judgment for the Auditor for the remainder amount paid under protest.
 I.
WERE THE EXCEPTED EXPENDITURES LAWFUL UNDER MISSISSIPPI STATUTORY AND CASE LAW?
The Appellants argue that all the expenditures by the authorities of Olive Branch were for a lawful purpose, and that the lower court was incorrect in holding that the expenditures, such as extra checks given to employees, police dinners, City Beautiful Commission lunches, travel advances to the Mayor, and Christmas parties, were donations, because there would have had to have been evidence of an "absence of consideration." The Auditor responds that a public board speaks and acts only through its minutes. In the absence of an entry on the minutes, a Board can take no action.
The Auditor took exception to two police dinners one in 1986 and one in 1989. He took exception to two City Beautiful Commission Meetings, one in December 1986 and one in December 1989, two travel advances for the Mayor, one in 1985 for $500.00 and one in 1989 for $300.00, and Christmas Volunteer Appreciation Dinners, during the months of December from 1985 through 1988.
A. Police Dinners.
At the trial Mayor Nichols testified that the police dinners were working meetings, held at times when gathering the entire police force together was necessary. Olive Branch stated that the credible testimony of Nichols was offered to show that the police dinners were business related, and the Auditor offered no proof otherwise. On that basis alone, the police dinners were lawful expenditures.
The Auditor counters that the record is clear that there was no authorization on the minutes of the city of Olive Branch for payment for these dinners. No minute entry or other documentation is found in any city record to say who was present or what business was conducted.
 A county board of supervisors approves the use of county funds collected from its community taxes and used for the betterment of their community. As such, our case precedent requires the entry of an order by the board of supervisors upon their minute book when sitting together for the purpose of making expenditures. . . .
Butler v. Board of Supervisors for Hinds County, 659 So.2d 578, 579 (Miss. 1995).
 [A]lways it has been the positive rule in this state, both by statute and by a long line of judicial decisions strictly enforcing those statutes, that boards of supervisors [sic] can bind counties, or districts therein, only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statutes, and that their contracts, and every other substantial action taken by them must be evidenced by entries on their minutes, and can be evidenced in no other way.
Board of Supervisors of Tishomingo County v. Dawson, 208 Miss. 666, 672, 45 So.2d 253 (1950) (quoting Lee County v. James,178 Miss. 554, 559, 174 So. 76, 77 (1937)).
The reasoning behind this rule is:
 (1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and (2) that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will *Page 677 
be evidenced by a written memorial entered upon the minutes at the time, and to which all the public may have access to see what was actually done.
Lee County, 178 Miss. at 558-59, 174 So. at 77.
The record reveals that the Mayor and the Board of Alderman did not approve the expenditures of Olive Branch. Only the Board could approve the expenditures of city funds for business purposes, and they must properly reflect the approval by the minutes. Thus, the exception taken to the police dinners was proper.
B. City Beautiful Commission Meetings.
Secondly the Mayor testified that the City Beautiful Commission dinners were actually annual work sessions. The City Beautiful Commission is composed of the Mayor's and the City aldermen's wives and various other volunteers. All are non-salaried. The commission is responsible for beautification projects in Olive Branch. Olive Branch argues that Mississippi Code Annotated §17-3-1 gives a municipality the discretion to "set aside, appropriate and expend moneys . . . for the purpose of advertising and bringing into favorable notice the opportunities, possibilities and resources of such municipality." Also, Mississippi Code Annotated § 17-3-3 allows different forms of advertising. Such advertising includes "newspaper[s] and magazine[s], literature, publicity, expositions, public entertainment, or other form of advertising or publicity which in the judgment of [the municipality] will be helpful toward advancing the moral, financial and other interests of such municipality." Miss. Code Ann. § 17-3-3.
The Auditor counters that, as with the police dinners, there was no mention in the minutes of the Board meetings for such expenditures.
The purpose of the law that duly elected members of a board must enter any decision for the expenditure of the municipalities' money is because
 an individual member of the board or agent thereof would be capable of binding the board and expending the public taxpayers' money without the benefit of the consent of the board as a whole which was elected and responsible for such purposes. In sum, the policy of protecting the public's funds for use by and for the public is paramount to other individual rights which may be involved.
Butler, 659 So.2d at 579.
 [T]he general law of Mississippi is that boards of supervisors can act only by and through orders placed upon the minutes, and this requirement is so stringent that an order actually entered upon the minutes is nevertheless void if the minutes are not signed by the president of the board, or, in his ability, by the vice president for the board, within the time prescribed by law. . . .
Warren County Port Comm'n v. Farrell Const. Co., 395 F.2d 901, 904 (5th Cir. 1968) (citing Gardner v. Price, 197 Miss. 831,21 So.2d 1 (1945); Brand v. Board of Supervisors of Newton County,198 Miss. 131, 21 So.2d 579 (1945)).
The Mayor and the Board of Alderman approved no statement for the purpose of the expenditure in the minutes of the board meeting. Olive Branch is correct in stating the Mississippi Code Annotated §§ 17-3-1, -3 allows public funds to be disbursed for the purpose of advertising and bringing into favorable notice the opportunities, possibilities, and resources of the city. Nevertheless, "[a] Board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did." Board of Supervisors AdamsCounty v. Giles, 219 Miss. 245, 259, 68 So.2d 483 (1953) (quoting Smith v. Board of Supervisors of Tallahatchie County,124 Miss. 36, 41, 86 So. 707, 709 (1920)). See also Martin v.Newell, 198 Miss. 809, 23 So.2d 796 (1945). Because of the requirement of documentation duly noted on the minutes, the Auditor's exception to the City Beautiful Commission lunches is proper.
C. Travel Advances.
The Auditor took exception to two travel advances given to Mayor Nichols, one for *Page 678 
$500.00 and one for $300.00. The advance of $300.00 was for a trip taken to research a sewer project the city was undertaking. The $500.00 advance was for a Mississippi Municipal Association Convention. Nichols testified that he turned in documentation for the trips, but the vouchers could not be found. The basis for the exceptions taken by the Auditor was a lack of supporting documentation.
The Auditor states that the city issued both warrants to the Mayor before the approval of the claim, without proper documentation and itemization as required by Mississippi Code Annotated § 25-3-41. Prior to 1990 travel advances were not authorized by this section of the Mississippi Code. A review of Mississippi Code Annotated § 25-3-41, as it existed prior to July 1, 1990, does not include a provision which allows an employee to receive a travel advance. However, for the first time the 1990 amendment authorized a city officer or employee to receive funds prior to travel.
Also, as above, there was no prior approval since there was no entry on the city's official minutes and, as stated previously,
 [a] county board of supervisors approves the use of county funds collected from its community taxes and used for the betterment of their community. As such, our case precedent requires the entry of an order by the board of supervisors upon their minute book when sitting together for the purpose of making expenditures. . . .
Butler v. Board of Supervisors for Hinds County, 659 So.2d 578, 579 (Miss. 1995).
 We also think it was error for the court to permit individual members of the board of supervisors to testify what the board did, and what the board understood, and what the board had authorized to be done in the premises. A board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did. The individuals composing the board cannot act for the county, nor officially in reference to the county's business, except as authorized by law, and the minutes of the board of supervisors must the repository and the evidence of their official acts.
Smith v. Board of Supervisors of Tallahatchie County, 124 Miss. 36, 41, 86 So. 707, 709 (1920).
Since there was no authority to receive a travel advance in 1985 or 1989, and there is no record appropriately noted on the minutes, the Auditor's exception to these amounts was proper.
D. Volunteer Appreciation Dinners.
The city of Olive Branch held Volunteer Appreciation Dinners annually until 1989 when the Auditor questioned them. Olive Branch contends that the dinners served a dual purpose. They were held to promote and publicize the city and to encourage the volunteers to continue their efforts in the coming year and the resulting publicity from those dinners cast a favorable light upon the city and its citizens. The volunteers included the City Beautiful Committee, the volunteer fire department, volunteer ambulance drivers and EMTs, the Planning Commission, the Housing Authority, the Industrial Development Committee, reserve police officers, and the trustees of the Chain Public Library. Olive Branch insists that its expenditures, regarding the Volunteer Appreciation Dinners, were lawful under Mississippi Code Annotated §§ 17-3-1, -3.
The Auditor rebuts that the dinners were merely donations and not legal expenditures of public funds. That there was no decision by the governing authorities ever spread on the minutes of the municipality suggesting the purpose of the parties was to advertise and bring favorable notice to the city.
Unlike the exceptions taken by the Auditor of the above expenses, the record reveals that Olive Branch brought up the Volunteer Appreciation Dinners at the board meetings. The minutes of the December 6, 1988 meeting contain the following paragraph:
 Alderman T.D. Doddridge made motion, seconded by Alderman G.P. Gillespie, that the city continue to have the annual Christmas Dinner in appreciation for all the volunteers who serve in various capacities *Page 679 
for the City of Olive Branch. Motion put to vote and passed unanimously.
The minutes for the November 4, 1986 meeting read:
 Mayor Nichols advised the Board that the date of Friday, December 5, 1986 had been set for the annual Volunteer Appreciation Christmas Dinner.
The discussion on the Volunteer Appreciation Christmas Dinner, in the meeting of October 6, 1987 consisted of the following:
 Next, Mayor Nichols informed the Board that the date of Friday, December 4, 1987 had been set for the annual Christmas Dinner at the Holiday Inn University.
Olive Branch states that the dinners were well within a municipal's discretion on how to spend its advertising dollars. As to the Auditor's argument, Olive Branch argues that it is not required that each word uttered in a Board meeting be recorded by the clerk. Although the Auditor's office would like a detailed discussion involving each expenditure to appear on the minutes, this Court does not hold the Board to such exacting, technical standards. To supports its argument Olive Branch cites the case of Stennis v. Board of Supervisors of Clay County, 232 Miss. 212, 98 So.2d 636 (1957), where this Court stated "it is established that strict legal technicality cannot be required. It is enough that by fair and reasonable interpretation the meaning of the minutes of boards of supervisors is ascertainable." Id.
at 227 (citing Noxubee County v. Long, 141 Miss. 72, 106 So. 83
(1925); People's Bank of Weir v. Attala County, 156 Miss. 560,126 So. 192 (1930)).
Olive Branch also cites Paine v. Underwood, 203 So.2d 593
(Miss. 1967), in which this Court stated "that the minutes of the Board reciting its orders and judgments will be looked upon with indulgence, and although they may not be skillfully drawn, if by fair and reasonable interpretation their meaning can be ascertained, they will be sufficient to answer the requirements of law." Paine, 203 So.2d at 598; In the Matter of theValidation of $30,000 Road and Bridge Bonds of 1960, SupervisorsDist. No. 3, Neshoba County, Mississippi, 242 Miss. 125,133 So.2d 267 (1961).
In Paine protectors appealed a Hinds County order to rezone residential land to commercial for a shopping center. When the Board adopted this ordinance the minutes of the board meeting were incorrectly captioned "Resolution" rather then "Ordinance." This Court held that the caption "Resolution," although not correct, sufficiently conveyed the Board's purpose.
 It is not necessary for the Board of Supervisors, in their order, to recite all the evidence that appeared before them, or to set out in full, in their order, all the evidentiary matters pertinent to the controversy; it is sufficient to recite the jurisdictional facts, as ultimate facts, without reciting the evidence upon which such facts depend for proof of their existence.
Board of Supervisors Adams County v. Giles, 219 Miss. 245, 259-60, 68 So.2d 483 (1953) (quoting Hall v. Franklin County,184 Miss. 77, 185 So. 591 (1938)).
Olive Branch is correct in its assertion that this Court does not hold municipalities to an exact standard. Yet the cases cited above stand for the proposition that after the board has thoroughly discussed the issue and all is noted in the minutes, if a word is misspelled, or if the wrong word is chosen, and if the facts in the minutes are sufficient to convey their purpose, then the municipality will not be held at fault.
Had Olive Branch determined that such dinners would be for the purpose of advertising and bringing into favorable notice the opportunities, possibilities and resources of Olive Branch, these governing authorities would need to record such determination upon the official municipal minutes as duly found and determined, then they could donate the dinners from available funds within the limit of the stated amount in Mississippi Code Annotated §17-3-1. By no stretch of the imagination is announcing that Olive Branch would hold the Volunteer Appreciation Dinner on a certain date adequate under the standards that have been set out by this Court. Olive Branch failed appropriately to document why the Board and Mayor determined to spend the tax payers' money as it *Page 680 
did. Thus, the Auditor's exception to these expenditures is valid.
E. 53rd Checks.
The Auditor took exception to Olive Branch's distribution of a fifty-third check to its employees because the Auditor deemed the extra check a bonus. Bonuses are donations and are prohibited by law.
Olive Branch contends that the extra check given each year is a policy of dividing an employee's compensation into fifty-three checks per year. Nichols testified that when they interviewed prospective employees they told them that their salary was based upon fifty-three checks, that standard deductions and taxes were held out of the 53rd check, and the checks were actually a part of the overall compensation package.
Of import is the fact the Board and the Mayor called these 53rd checks bonuses in their board meetings. Below are some excerpts from the board meetings:
 Next, discussion ensued in regard to Christmas bonuses for city employees. Alderman Bowlan made motion, seconded by Alderman Gillespie, that we continue this year giving employees one week's salary as Christmas bonus, but that the Board discuss this policy at a later date for continuation. Motion put to vote and passed unanimously.
Board Meeting Minutes, December 3, 1985, p. 3.
 Next, was a discussion of Christmas bonuses for employees. Alderman Scott B. Phillips made motion, seconded by Alderman T.D. Doddridge, that all employees be paid a Christmas Bonus this year, but that all employees be notified that no additional bonuses are contemplated being paid. Motion put to vote and passed unanimously.
Board Meeting Minutes, December 2, 1986, p. 2.
Second, the city payroll records introduced at trial show that they divided employee salaries into fifty-two checks. As an example, an employee's, Syble H. Barry's, salary was set at $16,100 in 1985. This figure divided by fifty-two is $309.62, which was the amount of her weekly paycheck. On December 6, she received two checks for $309.62 each.
Third, there were extra checks paid to employees who received an hourly wage. These persons' yearly earnings would depend on the time worked and, accordingly, could not be fitted into fifty-three weeks. These hourly workers received a check for an extra forty hour week that they never worked.
Fourth, the payroll records list the 53rd check as a "bonus." Fifth, this amount was paid during the Christmas season. Sixth, Olive Branch paid the 53rd check and the 52nd check at the same time. Seventh, the employees performed no extra work to be entitled to the extra check.
The Auditor took exception to the fifty-third check because it was determined that the 53rd checks were donations. This Court defined "donation" in the early case of Craig v. MercyHospital-Street Memorial, 209 Miss. 427, 439, 45 So.2d 809
(1950). This Court stated "the term `donation or gratuity' implies absence of consideration, the transfer of money or other things of value from the owner to another without any consideration." Craig, 209 Miss. at 439, 45 So.2d 809.
In Golding v. Salter, 234 Miss. 567, 107 So.2d 348 (1958), this Court considered the question of Christmas bonuses. This Court announced the following decision:
 [T]he payments were nevertheless gifts to the employees, and no law has been cited, and we think that none can be cited, which vests in the board of trustees of a county hospital the right to make donations of public funds to private individuals. As stated by the Court in Joint Consolidated School District No. 2 v. Johnson, 163 Kan. 202, 181 P.2d 504, 509, "That a public officer entrusted with public funds has no right to give them away is a statement so obviously true and correct as to preclude the necessity for citation of many authorities." The Legislature has never authorized, or attempted to authorize, any subordinate state agency to make donations of public funds to employees as Christmas presents. And payments of that kind are so clearly and distinctly payments which the board of trustees in this case could not *Page 681 
lawfully make as to bar the members of the board from claiming justification or immunity from liability therefor on the ground that the payments were made "in good faith and honest error."
Golding, 234 Miss. at 589, 107 So.2d at 356-57.
Also, as authority, the Auditor cites the Mississippi Constitution Art. 4, §§ 66, 96. The Mississippi Constitution Art. 4, § 66 states:
 No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-thirds of the members elect of each branch of the legislature, nor by any vote for a sectarian purpose or use.
The Mississippi Constitution Art. 4, § 96 states:
 The legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law; . . .
Olive Branch strongly argues that the 53rd checks were merely compensation and the employees relied on these promises made by Olive Branch before they were hired. Olive Branch cites several National Labor Relations Board cases for the proposition that when a 53rd check was part of the entire compensation package presented to prospective employees, during the initial employment interview, it is to be considered compensation not a bonus.N.L.R.B. v. Bancroft Mfg. Co., 635 F.2d 492 (5th Cir. 1981),cert. denied, 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981); Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185
(5th Cir. 1979); N.L.R.B. v. Zelrich, 344 F.2d 1011, 1014 (5th Cir. 1965); General Tel. Co. of Florida v. N.L.R.B.,337 F.2d 452, 453-54 (5th Cir. 1964); N.L.R.B. v. Citizens Hotel Co.,326 F.2d 501 (5th Cir. 1964). However, if this argument were true why would employees' salaries, listed in the payroll as a certain amount, be less the sum of the extra check? If, when hiring Syble H. Barry, see supra, she was told that her salary was set for $16,100, then why pay her the extra $309.62? If Barry was told she would get $16,409.62, why was this not presented on the payroll? Also, this argument is not persuasive because Olive Branch gave an extra check to hourly employees, who were told what their hourly pay would be, but certainly could not be told how much the extra check would be for at Christmas time.
It cannot be said that the trial judge was manifestly in error in granting this exception, and there is no merit to this assignment.
 II. HOME RULE
Olive Branch insists that all the expenditures should also be considered lawful, because the city is protected by the "home rule." This rule, Mississippi Code Annotated § 21-17-5, gives municipalities discretion in managing municipal affairs. The Auditor states that Mississippi Code Annotated § 21-17-5
expressly prohibits donations, which all of the contested expenses were.
In 1985 the Mississippi legislature passed the state's first municipal "home rule" statute. This statute, Mississippi Code Annotated § 21-17-5 states in pertinent part:
 (1) The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have the power to adopt any order, resolutions or ordinances with respect to such municipal affairs, property and finances which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi, and shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances.
 (2) Unless such actions are specifically authorized by another statute of law of the State of Mississippi, this section shall not authorize the governing authorities of a municipality to . . . (g) grant any donation. . . .
Olive Branch contends that the Auditor ignores the section in the "home rule" which *Page 682 
gives municipalities power to control the affairs of the municipality and focuses instead on the section which states that the "home rule" does not authorize donations. Olive Branch states that the difference in the positions of the Auditor and the Appellants is that the Auditor still considers any expenditure not specifically authorized by statute to be a donation. However, Olive Branch misstates the Auditor's position. The Auditor believes that Olive Branch had the authority to expend its monies in the fashion dictated by the law. Nevertheless, Olive Branch did not follow the law, by expressly determining that the questioned expenditures were for a valid purpose and "adopted" by the Board and the Mayor in the city minutes.
As stated above, most of the excepted expenditures, the Volunteer Appreciation Dinners, the travel advances by the Mayor, the police dinners, and the City Beautiful Commission Meetings, were not in the minutes of the meetings of the municipality and did not reflect authorization for the expenditures of the funds, which falls short of the requirement of documentation. "A Board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did." Board of Supervisors, Adams County v. Giles, 219 Miss. 245, 259, 68 So.2d 483 (1953) (quoting Smith v. Board ofSupervisors of Tallahatchie County, 124 Miss. 36, 41, 86 So. 707, 709 (1920)). See also Martin v. Newell et al., 198 Miss. 809, 23 So.2d 796 (1945). Also, the 53rd checks were a donation by the City of Olive Branch in direct contravention of the Mississippi Constitution of 1890, Article 4, §§ 66, 96 and Mississippi Code Annotated § 21-17-5(2)(g). The Auditor's exceptions are valid against Olive Branch.
 III. THE CITY WAS NOT DAMAGED BY THE CHALLENGED EXCEPTIONS
Olive Branch asserts that the expenditures cannot be considered unlawful because the city was not damaged by the expenditures and they should not be held liable for reimbursement of those expenditures. The basis of this argument is Olive Branch's theory that Mississippi Code Annotated § 31-7-57 applies to recover only "any actual loss caused by such unlawful expenditure."
In Richardson v. Canton Farm Equip., 608 So.2d 1240 (Miss. 1992), this Court discussed the changing language of Mississippi Code Annotated § 31-7-57, and other statutory sections that were in conflict with this section. The legislature changed the language in Mississippi Code Annotated § 31-7-57 from "for compensatory damages, in such sum equal to the full amount of such unlawful . . . expenditure or payment" to "for compensatory damages, in such sum equal to the full amount of such unlawful . . . expenditure or payment as will fully and completely compensate and repay such public funds for any actual losscaused by such unlawful expenditure" in 1988. After a thoughtful and lengthy discussion, Richardson, 608 So.2d at 1247-52, this Court determined that the term "actual loss" meant any sum which would be necessary to "fully and completely compensate and repay . . . [the coffers of (Olive Branch)] for any actual loss caused by such unlawful expenditure." Id. at 1252.
The public officials of Olive Branch chose to expend public funds, without proper authority, and an actual loss was incurred by the public body when the authorities spent money out of the "coffer" of Olive Branch. This argument has no merit.
This Court has consistently held that absent express authorization in a municipality's board minutes, expenditures made as such are unlawfully made. Also, donations by a municipality are unlawful. Because Olive Branch failed to establish why this Court should not follow these paradigms, the Circuit Court's opinion, that the expenditures were unlawful and that the individual appellants were liable for those expenditures, should not be overturned on appeal.
AFFIRMED.
DAN M. LEE, C.J., PRATHER, P.J., and BANKS, McRAE, JAMES L. ROBERTS, SMITH and MILLS, JJ., concur.
PITTMAN, J., not participating.
[1] These are contained in the above exceptions to petty cash transactions, and miscellaneous dinners. *Page 683