# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01612-SCT

*MOUND BAYOU SCHOOL DISTRICT*

*v.*

*CLEVELAND SCHOOL DISTRICT*

## ON MOTIONS FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 7/21/1999 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | WILLIAM SHATTUCK ADAMS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/23/2002 |
| APPELLANT'S MOTION FOR REHEARING FILED: | 11/29/2001 |
| APPELLEE'S MOTION FOR REHEARING FILED: | 11/13/2001 |
| MANDATE ISSUED: | 6/13/2002 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. The motions for rehearing are denied, and this opinion is issued in lieu of our prior per curiam affirmance.

¶2. This case involves a dispute over money between two separate school districts in Bolivar County, Mississippi. The Cleveland School District filed suit against the Mound Bayou School District for what Cleveland contended was a failure to repay two separate loans. The Chancery Court of the Second Judicial District of Bolivar County granted summary judgment in favor of Cleveland on the issue of Mound Bayou's obligation to repay the loans, but declined to allow Cleveland to recoup the monies by set off.

¶3. Finding no error, we affirm the chancellor's grant of summary judgment in favor of Cleveland.

# FACTS

¶4. Prior to January 1, 1992, the Bolivar County, Mississippi, Board of Education consisted of six school districts, including the Cleveland School District and the Mound Bayou School District. In 1988, Robert G. Mason, the Bolivar County Superintendent, loaned $300,000 to Mound Bayou. A few days later, at a regular meeting of the Board, the Superintendent explained his actions. The loan was treated as a claim on the monthly claims docket, and the Superintendent's actions were ratified in the minutes when the Board granted the Superintendent the discretion to make such loans. As of June 30, 1991, Mound Bayou had repaid $25,000 of this sum, leaving a balance of $275,000. The Bolivar County Superintendent made another loan to Mound Bayou in the amount of $87,597.81 on June 30, 1991.

¶5. On January 1, 1992, the Bolivar County Board of Education was dissolved by the State Legislature. An Interlocal Agreement was entered into by the six school districts, including Mound Bayou and Cleveland. The Agreement provided, inter alia, for the division of assets between the member school districts. Cleveland contends that, under the Agreement, it was entitled to 54.11% of all of the former Bolivar County assets and that the loan from Bolivar County to Mound Bayou should be considered one of the Bolivar County assets to be divided among the six school districts.

¶6. Mound Bayou adopted a resolution on June 30, 1993, in which it acknowledged that the State Auditor's Office had confirmed that Mound Bayou owed $275,000 to the other five school districts.

¶7. After Mound Bayou failed to pay off the loan, Cleveland filed a complaint for declaratory relief and declaratory judgment against Mound Bayou, alleging that the two debts were owed to it by Mound Bayou, and that Mound Bayou failed and refused to acknowledge the existence or the accuracy of its indebtedness. Cleveland then filed a motion for summary judgment and supported the motion with (1) relevant portions of audit reports prepared by the State Auditor's Office and other independent auditors; (2) copies of communications between Cleveland and Mound Bayou, between auditors and Mound Bayou's Superintendent confirming both the debt and the correct amount of the debt; and (3) Mason's affidavit, which contained a detailed explanation of the circumstances surrounding the loans and the Board of Education's actions, all of which were supported by pertinent bank statements, a canceled check from Bolivar County to Mound Bayou in the amount of $300,000, dated August 30, 1988, bookkeeping entries, minutes and various docket entries.

¶8. The only evidence submitted by Mound Bayou in opposition to Cleveland's motion for summary judgment was the affidavit of Arthur Holmes, a former Mound Bayou Board of Education Superintendent, who merely denied asking for the 1988 loan or agreeing to repay it by any particular date. Holmes did not deny that Mount Bayou received the funds. The affidavit did not address the 1991 loan as it was made after he had been removed from office. We find that Mound Bayou's response to the motion for summary judgment did not create a contested issue of fact.

¶9. The chancellor granted summary judgment in favor of Cleveland, finding as follows:

> (1) The September, 1988, minutes reflect that Bolivar County authorized the Superintendent to transfer funds to its districts upon request.
>
> (2) The transfer of the $300,000 to Mound Bayou was not specifically referenced in the minutes.
>
> (3) The $300,000 loan was placed on the Bolivar County claims docket during the meeting.

(4) Mound Bayou deposited the check.

(5) Mound Bayou audit reports show that Mound Bayou repaid $25,000 of the loan.

(6) On February 28, 1994, Cleveland's Superintendent wrote a letter to Mound Bayou's Superintendent showing the amounts Mound Bayou owed each of the six districts as a result of the $300,000 loan.

(7) Mound Bayou's Superintendent responded on March 29, 1994, acknowledging the $275,000 still owing to the six districts and stating that Mound Bayou had passed a resolution of debt on June 30, 1993.

(8) $130,681.15 was transferred from Bolivar County to Mound Bayou in 1991, and Mound Bayou still owed $87,597.81 from this loan.

(9) Even though counties cannot be bound by contracts without evidence by way of entries on the minutes of meetings of the board of supervisors, *Nichols v. Patterson*, 678 So. 2d 673, 676 (Miss. 1996), strict legal technicality is not required, and if the meaning of the minutes can be fairly and reasonably interpreted, the minutes will be deemed sufficient. *Id.* at 679.

(10) A reasonable interpretation of the September, 1988, Board meeting is that the Board authorized the transfer of funds to Mound Bayou.

(11) Counties' protections from being bound by contracts made without the Board's authorization pertains to contracts between the counties and *third parties*, not between one county entity and another county entity. Here, both county entities serve the public interest.

(12) Mound Bayou received a benefit when the transfer of funds was made.

(13) Mound Bayou's partial payment on the two loans was an acknowledgment that the debts exist and that Mound Bayou has an obligation to repay. Where a party has acknowledged a debt, it is prohibited from arguing that the lender has waived its right to repayment. Therefore, waiver is not an available defense for Mound Bayou.

(14) The doctrine of equitable estoppel requires proof of a (1) belief and reliance on some representation; (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position. *Covington County v. Page*, 456 So. 2d 739, 741 (Miss. 1984). Here, Bolivar County relied on Mound Bayou's representation that it would repay the two loans. When Mound Bayou failed to repay the loans, it changed its position and harmed Cleveland because such change resulted in fewer funds available to Cleveland. Therefore, equitable estoppel bars Mound Bayou from denying the validity of the loans and its obligation to repay the loans.

(15) Cleveland's evidence of the debt was not rebutted by Mound Bayou. The evidence shows that the transfers of funds were made and were not repaid by Mound Bayou.

¶10. Aggrieved by the chancery court's grant of summary judgment to Cleveland, Mound Bayou appeals, raising issues of erroneous findings of fact, equitable estoppel and waiver. Cleveland cross appeals, raising an issue of set-off.

## DISCUSSION

¶11. We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor. The burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt. *Williamson v. Keith*, 786 So. 2d 390, 393 (Miss. 2001); *Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000) (quoting *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss.1996)).

### I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT BOLIVAR COUNTY LOANED FUNDS TO MOUND BAYOU.

### II. WHETHER THE TRIAL COURT ERRED WHEN IT FOUND THAT MOUND BAYOU ASKED FOR A LOAN AND AGREED TO REPAY THE LOAN.

¶12. Mound Bayou contends that Cleveland cannot prove that the loans were made because school boards may speak only through their minutes, and public bodies may not be bound by contracts without evidence of the contract terms in the minutes. *Nichols v. Patterson*, 678 So. 2d 673, 676 (Miss. 1996). We find that a fair and reasonable interpretation of the Bolivar County minutes supports the chancellor's finding that the loan was ratified by the Bolivar County Board. The loan was placed on the Bolivar County claims docket during the meeting and the Bolivar County Superintendent was given the authority to make such loans.

¶13. The evidence submitted by Mound Bayou fails to show even remotely that the loans were not made. Mound Bayou was not required to come forward in opposition to the motion with conclusive evidence that the debt did not exist, but it was required to come forward and make a sufficient showing to establish the essential elements on which it would have the burden of proving at trial. *See, e.g., Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 683 (Miss. 1987); *Campbell v. Cranford*, 737 So. 2d 1032, 1038 (Miss. Ct. App. 1999). *See also* M.R.C.P. 56(e).[1] Having reviewed all evidence that was provided in support of and against the motion for summary judgment, we agree with the chancellor that the two loans were indeed made from Bolivar County to Mound Bayou and that Mound Bayou acknowledged the debt existed by making partial repayment of the loans. Mound Bayou also acknowledged in its resolution dated June 30, 1993, that the State Auditor's Office had deemed the transfers of funds to be valid debts between Mound Bayou and the other five school districts. The only item submitted by Mound Bayou in response to the motion for summary judgment was a Mound Bayou Superintendent's affidavit that he neither requested nor received the 1988 loan funds. The copy of the cancelled check to Mound Bayou in the amount of $300,000 overwhelmingly undermines the veracity of the Superintendent's statements. We therefore conclude that the trial court did not err in granting summary judgment in favor of Cleveland.

### III. WHETHER THE TRIAL COURT ERRED WHEN IT FOUND THAT THE DOCTRINE OF EQUITABLE ESTOPPEL APPLIED.

¶14. Mound Bayou argues that, because there was no indication in the Board's minutes that Bolivar County

relied on a representation made by Mound Bayou or changed its position as a result of the representation or incurred detriment or prejudice as a result thereof, equitable estoppel would not apply.

¶15. The doctrine of equitable estoppel requires proof of a (1) belief and reliance on some representation; (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position. *Covington County v. Page*, 456 So. 2d 739, 741 (Miss. 1984). The chancellor found that (1) Bolivar County relied on Mound Bayou's representation that it would repay the two loans; (2) when Mound Bayou failed to repay the loans, it changed its position and harmed Cleveland because such change resulted in fewer funds available to Cleveland; and (3) therefore, equitable estoppel bars Mound Bayou from denying the validity of the loans and its obligation to repay the loans.

¶16. Viewing the evidence in the light most favorable to the party against whom the motion has been made, we find that there is no genuine issue of material fact. Mound Bayou asked for and received the loans from Bolivar County, Bolivar County changed its position in reliance on Mound Bayou's promise to repay the loans, and Bolivar County, and hence, Cleveland, was harmed as a result of not being repaid.

### IV. WHETHER CLEVELAND WAIVED ITS RIGHT TO RECOVER AGAINST MOUND BAYOU.

¶17. The chancellor found that (1) Mound Bayou's partial payment on the two loans was an acknowledgment that the debts exist and that Mound Bayou has an obligation to repay; (2) where a party has acknowledged a debt, it is prohibited from arguing that the lender has waived its right to repayment; and (3) waiver, therefore, is not an available defense for Mound Bayou.

¶18. Viewing the evidence in the light most favorable to the party against whom the motion has been made, we find that there is no genuine issue of material fact. Mound Bayou acknowledged the debts by making partial payments on each and by formally adopting a resolution that the debts existed, and it cannot now rely upon the defense of waiver.

### V. WHETHER CLEVELAND HAS A RIGHT OF SET OFF AGAINST SIXTEENTH SECTION RENTS COLLECTED BY CLEVELAND FOR THE BENEFIT OF MOUND BAYOU.

¶19. The chancellor held that Cleveland did not have a right of set off against the rents and ordered Cleveland to release the sixteenth section rents collected by Cleveland for the benefit of Mound Bayou. Cleveland cross-appeals on this issue.

¶20. Cleveland argues that, because the common law principle of set off is alive and well in Mississippi, the burden should be on Mound Bayou to demonstrate why it should not apply here, and that governmental entities should be able to use set off against other governmental entities in the way that common law allows private individuals to do so. Cleveland further argues that the use of set off is even more applicable in this situation, where Cleveland has a valid judgment against Mound Bayou. It also points to the difficulty of collecting judgments against governmental entities because art. 6, § 172A of the Mississippi Constitution prohibits courts from ordering a governmental entity to raise taxes to pay off a valid judgment. Set off, then would be the only efficient, inexpensive way for one governmental entity to recover valid debts from another.

¶21. Mound Bayou responds that sixteenth section lands and proceeds therefrom are public property to be

held in trust for the benefit of a school district's educable children. Miss. Code Ann. § 29-3-1 (2000). Mound Bayou argues that one who holds school lands as a trustee is precluded from giving away, appropriating to his own use, or otherwise disposing of the corpus of a trust in derogation of the rights of the beneficiaries. *Hill v. Thompson*, 564 So. 2d 1, 6 (Miss. 1989); *Tally v. Bd. of Supervisors*, 323 So. 2d 547, 550 (Miss. 1975); *Holmes v. Jones*, 318 So. 2d 865, 868-69 (Miss. 1973). Finally, Miss. Code Ann. § 25-1-71 (1999) provides as follows:

> **All money deposited in a bank** or with any depository **by or for a tax collector or other officer having the custody of public funds,** state, county, municipal, levee board, road districts, drainage districts, or **school districts**, whether the same be deposited in the name of the officer as an individual or as an officer or in the name of any other person, **is prima facie public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository . . . .**

(emphasis added).

¶22. There is no way for Cleveland to sidestep §§ 25-1-71 & 29-3-1. The statutes' meaning is clear: sixteenth section rents collected for the benefit of the Mound Bayou School District can only be used for the benefit of the Mound Bayou School District's educable children and cannot be used to satisfy a judgment, whether the judgment be held by a governmental entity such as the Cleveland School District, or a private individual or business.

## CONCLUSION

¶23. Because there is no genuine issue of material fact, we affirm the grant of summary judgment in favor of the Cleveland School District. We likewise affirm the trial court's denial of Cleveland's request for set off and its order that Cleveland release the sixteenth section rents held in trust for Mound Bayou. Therefore, we affirm the circuit court's judgment in its entirety.

¶24. **AFFIRMED.**

> **PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**

1. M.R.C.P. 56(e) provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.