# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-SA-00691-COA

CHARLES GREG DAVIS                                                  APPELLANT

v.

THE STATE OF MISSISSIPPI, EX REL. JIM                              APPELLEES
HOOD, ATTORNEY GENERAL, AND STACEY
PICKERING, STATE AUDITOR, FOR THE USE
AND BENEFIT OF THE TAXPAYERS OF CITY
OF SOUTHAVEN, MISSISSIPPI; CITY OF
SOUTHAVEN, MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2014 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL A. HEILMAN |
| | EDWARD TAYLOR POLK |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELISSA C. PATTERSON |
| | WILSON DOUGLAS MINOR |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | APPELLANT ORDERED TO REPAY $73,915.17; APPELLANT'S COUNTERCLAIM DENIED |
| DISPOSITION: | AFFIRMED: 12/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Greg Davis was the mayor of Southaven from 1997 to 2013.  In March 2011, one of

the city aldermen alerted the State Auditor that the City had paid more than $34,000 toward

what appeared to be marriage counseling for Davis and his wife at Psychological Counseling

Services (PCS) in Arizona.  In his efforts to get the City to pay for the counseling, Davis

called PCS "Professional Services," and he alternatively referred to the counseling he received there as "training," "classes," and "seminars." Davis fabricated an invoice from PCS to the City for some of the bill, showing that it was for an "Executive Management Intense Training Course." He requested reimbursement to his personal credit card for the remainder of the counseling bill, which he described in an invoice to the City as "PCS Classes." Davis also received per diem during some of the trip, while still charging meals and other expenses to a city credit card, including some restaurant bills which he later claimed were paid for the promotion of the City of Southaven.

¶2.     Following an investigation, the State Auditor determined that from July 2009 to April 2011, Davis had charged $130,436.52 on a city credit card, was reimbursed $128,642.59 for expenses on a personal credit card, and had received $37,316.99 in mileage reimbursement. But he had provided the City with very little documentation to support these claimed expenses, and as a result the auditor took exception to many of them. Davis initially repaid certain amounts he did not contest, such as the cost of his wife's counseling at PCS. This was followed by a $96,000 payment, which Davis claimed he believed was in full satisfaction of the auditor's demands. But when the auditor ultimately sued him to recover an additional $74,000, Davis denied liability and counterclaimed to recover that $96,000 payment.

¶3.     The case was tried in the Hinds County Chancery Court. The chancellor agreed with the State Auditor on the amount owed and denied Davis's counterclaim. Davis appeals. We affirm the chancellor's judgment.

2

## STANDARD OF REVIEW

¶4. This Court employs a limited standard of review on appeals from chancery court. *Corp. Mgmt. Inc. v. Greene Cnty.*, 23 So. 3d 454, 459 (¶11) (Miss. 2009). Under that standard, we "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or applied an erroneous legal standard." *Id*. Questions of law are reviewed de novo. *Id*.

## DISCUSSION

¶5. The State Auditor sought reimbursement from Davis for funds paid to him or on his behalf in what the trial court divided into six different categories – (1) payments that were made to Davis's personal credit card ostensibly for reimbursement of tourism- and travel-related expenses, totaling about $118,000; (2) certain other travel expenses; (3) excess mileage reimbursements of about $4,500; (4) approximately $6,000 of charges on a city credit card; (5) payments made directly to Psychological Counseling Services for what the auditor alleged was marital counseling; and (6) investigative costs and interest. On appeal, Davis challenges each of these awards.

### 1. Credit Card Reimbursements

¶6. Each month, Davis would submit invoices to the City to be paid directly to his personal credit card account. The invoices showed a total amount to be paid, which was generally broken down into three categories: "Phone," "Travel & Training," and "Tourism."

3

The categories sometimes included more specific information, such as a place traveled to, or were sometimes subdivided; but the invoices contained no meaningful itemization and no supporting documentation for any expenses other than the phone bill. The invoices were subsequently placed on the City's monthly claims docket and approved by the Board of Aldermen.

¶7. At the State Auditor's request, Davis attempted to document these expenses. He produced credit card statements with handwritten notes showing various charges that he attributed to travel or tourism, though there were frequent discrepancies in the amounts claimed. Davis admitted that he often included in his totals expenses he incurred on the City's behalf that he did not place on the credit card.

¶8. For tourism and promotion in particular, Davis claimed to have spent most of the money "promoting the city" by meeting with "local business leaders" at nearby restaurants, though he usually could not or would not say specifically who he was entertaining. Davis produced receipts for some of the charges, which showed food purchases frequently accompanied by large numbers of alcoholic beverages and generous gratuities (generally twenty-five to fifty percent of the bill, occasionally larger).

¶9. The State Auditor alleged that Davis appeared to be "double dipping" by seeking reimbursement from both the City and the Southaven Chamber of Commerce for many of the same expenses, though this was disputed, and it does not seem to have factored into the trial court's decision. It was also pointed out that Davis had been reimbursed by the City for

4

money he claimed to have spent on its behalf while on personal vacations. Notable was a trip to Key West, Florida, where Davis sought reimbursement for travel and clothing purchases when the trip was "converted" to city business after Davis met unnamed representatives from General Motors while on vacation and claimed to have bought gifts for them. Davis's wife testified at trial that the clothing bought on the trip was actually for family and friends. Davis also sought reimbursement for his travel and expenses while attending counseling in Arizona, as well as some expenses incurred during a family vacation to California, where Davis said he was promoting the City by entertaining a developer.

¶10. The chancellor found that Davis had never presented the Board of Aldermen with sufficient information to legally pay his personal credit card expenses. Davis was liable because he had induced the City to pay without legal authority.

¶11. Davis admitted in his testimony at trial that he did not provide receipts or credit card statements with his reimbursement invoices. On appeal, he asserts that documentation for his invoices was obtained by the city clerk somehow and then made available to the Board. But the testimony he points to spoke only in general terms about what was supposed to happen or what generally happened in other cases. Davis himself admitted at trial that he never provided statements, receipts, or other documents to the city clerk. The chancellor's finding that no itemization or documentation was provided or otherwise available is certainly supported by substantial evidence.

¶12. Davis next argues that the trial judge erroneously relied on *Nichols v. Patterson*, 678

5

So. 2d 673 (Miss. 1996), which he contends is inapposite for two reasons. In *Nichols*, the supreme court affirmed a judgment for the State Auditor against the Aldermen of the City of Olive Branch, where the aldermen had failed to find that certain expenditures were for a lawful purpose. Davis's argument is apparently that because the Board of Aldermen budgeted money to tourism and promotion at the beginning of the year, they were not required to consider whether docketed claims were themselves for that purpose. Davis provides no authority for this proposition.

¶13. Davis also asserts that he cannot be liable under *Nichols* because it concerned the liability of aldermen, who are only liable individually for expenditures if they have personally voted for them. *See* Miss. Code Ann. § 31-7-57(6) (Rev. 2010). As mayor, Davis could only vote if there was a tie among the Board of Aldermen, and apparently he never voted with regard to his invoices. This argument is also without merit, as section 31-7-57(3) provides concurrent liability for the "individual members, officers, employees or agents of any agency or governing authority" who cause "public funds to be expended . . . or any payment made, in any manner whatsoever, contrary to or without complying with any statute of the State of Mississippi[.]"

¶14. Finally, Davis contends that the auditor was required to show an "actual loss," which he argues placed the burden on the auditor to prove that he did not, in fact, spend money toward legitimate ends of the City. The supreme court addressed and rejected this in *Nichols*: expenditures made without a legitimate finding from the Board that they are to objects

authorized by law are an actual loss to the municipality. *Nichols*, 678 So. 2d at 682.

¶15. With regard to the travel expenses, the chancery court found that they had been illegally paid because Davis's travel was not preapproved. On appeal, Davis points to following sentence from the City of Southaven's Employee Policies and Procedure Manual, adopted in 1998, which he claims allowed him to preapprove his own travel: "Rules and Regulations governing official travel are established in accordance with the Office of Mayor and applicable state law." While we agree that the law allows the delegation of authority to preapprove travel, there is no record evidence that any "regulations" were established either by or "in accordance with" the mayor's office, as Davis argues. Instead, the practice apparently was that elected officials, including Davis, did not seek anyone's approval before traveling at the City's expense. There is no evidence in the record that they did this through any formal delegation of the authority to preapprove their own travel. Since Davis's travel was not preapproved, we find no error in the chancellor's award regarding travel expenses.

**2. Mileage Reimbursement**

¶16. The State Auditor also took exception to mileage paid to Davis. Davis testified that he considered himself to be on official business any time he was traveling inside the City of Southaven in his personal vehicle. He claimed mileage based on odometer readings, taken weeks apart, and did not keep a log of any individual trips, either within or outside of the City. For some months, Davis claimed one hundred percent of the mileage reflected on his odometer was reimbursable. Davis was reimbursed approximately $1,400 per month over

7

the relevant period. The State Auditor, citing the absence of documentation, sought reimbursement for twelve percent of the mileage. The chancery court found that the auditor's exception was reasonable given the lack of documentation and awarded the twelve percent requested.

¶17. Davis points to a 1999 resolution (adopted while Davis was driving a city-owned vehicle) providing that the mayor was "at all times . . . in constant promotion of [the] city," "is on call 24 hours a day, 7 days a week," and "should be in contact with all city departments and available to respond to any calls in an official vehicle." According to Davis, this allowed him to claim reimbursement for all of the mileage driven in his personal vehicle within the City, even his travel to and from work.

¶18. The State responds that the resolution in question was passed by a prior board of aldermen and was "self-revoked" once a new board took office. *See Biloxi Firefighters Ass'n v. City of Biloxi*, 810 So. 2d 589, 594 (¶19) (Miss. 2002). Moreover, the State argues, and we agree, that Mississippi Code Annotated section 25-3-41 (Rev. 2010) requires preauthorization for mileage reimbursement, and that authorization must be made on a case-by-case basis. Consequently Davis could not claim reimbursement for any of the mileage. We cannot find error in the chancellor's award.

### 3. City Credit Card

¶19. Next, Davis challenges the chancery court's finding requiring him to repay certain expenditures on a city credit card. The Board of Aldermen had initially approved all of

8

Davis's charges on this card, but later reexamined the charges and found the City "did not possess sufficient information, proof or documentation to establish" that $5,951.96 of the charges "were related to City business." The chancellor awarded that amount.

¶20. On appeal, Davis contends that this was error because the Board did not explicitly rescind its approval of those charges. However, Mississippi Code Annotated section 21-39-27(2) (Rev. 2015) requires that "members of the governing authority and municipal employees shall furnish receipts for the use of such credit cards each month to the municipal clerk" and that "such expenditures may be allowed for payment by the municipality in the same manner as other items on the claims docket." Davis argues that section 21-39-27 only expressly provides liability when the expenditures are not approved by the governing authority. But that statute does not state that it immunizes the holder of the card for misuse if the governing authority approves the charges. Section 31-7-57(3) provides for liability for "causing any public funds to be expended, any contract made or let, any payment made on any contract or any purchase made, or any payment made, in any manner whatsoever, contrary to or without complying with any statute of the State of Mississippi." Davis failed to comply with section 21-39-27(2). And we have already rejected Davis's argument that the auditor was required to show an "actual loss" beyond money being paid without a valid finding that it was to an object authorized by law. We find no error in this award.

### 4. Counseling Expenses

¶21. The chancery court found that the payment for Davis's counseling at PCS in Arizona

9

was an unlawful donation in violation of statute and the Mississippi Constitution. "[T]he term donation or gratuity implies absence of consideration, the transfer of money or other things of value from the owner to another without any consideration." *Nichols*, 678 So. 2d at 680 (quoting *Craig v. Mercy Hosp.–St. Mem'l*, 209 Miss. 427, 439, 45 So. 2d 809 (1950) (internal quotation marks omitted).

¶22. The proof at trial showed that Davis and his wife attended counseling at her behest after she had threatened suicide over issues relating to their marital relationship. Davis contended that while marital problems may have been factor in his decision to seek counseling, they were intertwined with stress and other work-related issues for which he required treatment.

¶23. Although the City initially paid for Davis's wife's counseling, Davis does not contest the auditor's exception to that portion of the expenses.

¶24. On appeal, Davis challenges the chancellor's finding as not affording sufficient deference to the decisions of a municipality. *See, e.g., Riverside Traffic Sys. Inc. v. Bostwick*, 78 So. 3d 881, 885 (¶17) (Miss. 2011). But this is not an appeal from the decision of a municipality, and Davis has conceded that the standard of review is the familiar substantial evidence / manifest error standard from the findings of the trial judge. Our courts have employed that standard in other donation cases. *See, e.g., Hill v. Thompson*, 564 So. 2d 1, 9 (Miss. 1989); *State ex rel. Coleman v. Dear*, 212 Miss. 620, 634-35, 55 So. 2d 370, 376 (1951).

¶25. Given Davis's wife's testimony, we find that substantial evidence supports the chancellor's decision that the counseling "was entirely personal in nature and was wholly unrelated to any City business" and that the Board's approval of the payments was an illegal donation.

### 5. Investigative Costs, Interest, and Recoupment

¶26. As to Davis's counterclaim for recoupment of the $96,000 payment to the State Auditor, his argument is premised on his prevailing on his other challenges to the award. Since he did not, the issue is without merit. Likewise, Davis does not brief an independent challenge to the awards of investigative costs and interest, and so we affirm those awards as well.

¶27. **THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL AND WILSON, JJ., CONCUR. BARNES, CARLTON AND JAMES, JJ., NOT PARTICIPATING.**