THOMAS, P.J.,
for the Court:
¶ 1. Charles Campbell appeals a Forrest County Circuit Court’s judgment granting summary judgment in favor of the appel-lee, Thomas Cranford, individually and as *1034 agent/owner of Alpha Omega Kappa, Inc. We affirm.
FACTS
¶2. In July of 1993, Campbell entered into a partnership agreement with Dixie Angela Stone, wife of defendant, Charles Stone. The purpose of the partnership was for the business of buying, breeding, raising, and selling boar goats. According to Campbell, he purchased the animals and deposited sums of money in a partnership account, and Dixie Stone was responsible for tending to the goats. Ultimately, the partnership was dissolved following litigation of matters pertaining to the partnership. Campbell alleges that as a result of the liquidation of the partnership he sustained a loss of $155,000.
¶ 3. In the present case, Campbell seeks damages from the alleged interference of Dixie Stone’s husband, Charles Stone, Thomas Cranford and the Mississippi Goat Farming Association. Cranford financed Dixie Stone’s initial investment into the partnership with Campbell in 1993. In the fall of 1994 and winter of 1995, Cranford and Campbell met on several occasions, and the two discussed Cranford’s interest in purchasing Campbell’s ownership in the Campbell-Stone partnership. It is undisputed that Cranford’s offers of purchase were made on behalf of Charles and Dixie Stone.
¶4. In the partnership dissolution proceedings, the livestock was placed in receivership. Campbell asserts that Cran-ford inappropriately assisted Dixie Stone by financing her purchases of the animals from the receivership. Next, Campbell contends that Cranford improperly loaned money to Leslie Martin of the Mississippi Goat Farming Association, who Campbell alleges was “attempting to hire Dixie Angela Stone away from her partner, Plaintiff, Campbell.” The appellant also avers that Charles Stone and Cranford improperly encouraged Dixie Stone to breach her partnership contract with him.
¶5. Another point of contention raised by Campbell involves the breeding methods the partnership used for the goats. Apparently, Campbell and Dixie Stone used a traditional method of breeding the boar goats. Later, Dixie Stone, the caretaker of the livestock, was persuaded by her husband and Cranford to use an alternative method of breeding referred to as “flushing.” Campbell did not approve of the “flushing method” and claimed it was a more expensive and a slower process. Campbell charged that this alternative breeding approach caused delays in selling the goats and resulted in his $155,000 loss. According to Campbell, he believed that Charles Stone and Cranford determined that more money could be made in the goat rearing business by use of this alternative method of breeding, and thus sought to interfere with his business partnership with Dixie Stone.
¶ 6. Campbell insists that the actions of Cranford and Charles Stone were intentional and willful acts calculated to cause Dixie Stone to breach her partnership agreement with him. Consequently, on January 8, 1997, Charles Campbell filed a complaint in the Circuit Court of Forrest County against Charles R. Stone, Thomas E. Cranford, individually and as agent /owner of Alpha Omega Kappa, Inc., and the Mississippi Goat Farming Association alleging tortious interference with business relations and a business contract and seeking actual damages in the amount of $155,-000 and exemplary damages in the amount of $100,000.
¶ 7. Cranford answered the complaint admitting (1) that he loaned Dixie Stone $2,500 for her investment into the Campbell-Stone partnership, (2) that he met with Campbell on three occasions, and (3) that Alpha Omega Kappa, Inc. loaned Leslie Martin money to obtain office space. Cranford denied all of the other accusations relating to tortious activity lodged by Campbell. In his answer, Cranford asserted a number of affirmative defenses. Among such defenses, Cranford asserted *1035 (1) that at all times he was acting as a disclosed agent for a known principal, dealing at arm’s length with Campbell, a sophisticated businessman; (2) that Campbell is barred from recovery from him because he entered into “an accord and satisfaction” with the principal of a disclosed agent; and (3) that Campbell’s action is barred from recovery “based on the principle of election of remedies” and his wrongful attempt “to split a cause of action.”
¶ 8. On October 28, 1997, Cranford filed a motion for summary judgment. After a hearing on the matter, a transcript of which was not made, the Forrest County Circuit Court concluded that Campbell had failed to come forward with “any evidence to create any dispute as to material facts that create issues for determination by a jury and has failed to bring forth sufficient evidence in support of each of the four elements he is required to establish to withstand Cranford’s Motion for Summary Judgment.” Campbell appeals the circuit court’s ruling raising the issue of whether or not summary judgment was proper as to Thomas E. Cranford and his business, Alpha Omega Kappa, Inc.
ANALYSIS
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THOMAS E. CRANFORD, INDIVIDUALLY AND ALPHA OMEGA KAPPA, INC.?
¶ 9. Mississippi Rule of Civil Procedure 56(b) permits a defending party to seek a summary judgment in his favor as to any or all parts of the complaint filed against him. Summary judgment is appropriate only where there are no genuine issues of material fact; it is not a substitute for a trial of disputed fact issues. M.R.C.P. 56(cmt). A trial court is not permitted to try issues of fact on a Rule 56 motion. Rather, it may only decide whether there are issues to be tried. Id. Furthermore, this Court conducts a de novo review of summary judgments awarded by trial courts. Canizaro v. Mobile Comm. Corp. of Am., 655 So.2d 25, 28 (Miss.1995). Consequently, summary judgment should be granted only where the pleadings, discovery materials, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M.R.C.P. 56. Regarding summary judgments, the Mississippi Supreme Court has stated:
In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial. In such a situation, there can be “no genuine issue as to any material fact,” since a complete failure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial. The moving party is “entitled to judgment as a matter of law” because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
Galloway v. Travelers Ins. Co., 515 So.2d 678, 683 (Miss.1987). Moreover, once a motion for summary judgment is filed the opposing party “must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.... This burden of rebuttal arises, however, only after the moving party has satisfied its burden of proving that no genuine issue of material fact exists.... ” Foster v. Noel, 715 So.2d 174, 180 (¶ 35) (Miss.1998) (citations omitted).
¶ 10. Campbell argues that summary judgment was inappropriate because from the pleadings, motion, answer, and affidavits, it is apparent that the appellee, Cran-ford, “had personal designs” on the business he owned with Dixie Stone. While *1036 Campbell concedes that Cranford’s loan to Dixie Stone for her initial investment into the partnership was legitimate, he argues that subsequent loans made by Cranford to Dixie Stone exhibited Cranford’s efforts to assist her in breaching the partnership agreement. Cranford implores that Dixie Stone’s attempt to purchase partnership animals held in the receivership was inappropriate and reasons that Cranford’s loan for such purpose constituted tortious interference with the partnership.
¶ 11. Next, Campbell alleges that Dixie Stone and Cranford met with Leslie Martin about the boar goat breeding procedures. Campbell advances that after such meeting “a riff’ ensued between himself and his partner. Such “riff,” according to Campbell, was calculated to “drive a wedge” between himself and Dixie Stone and designed by Cranford to destroy the partnership thereby allowing Martin the opportunity to purchase the partnership herd from receivership. Campbell further maintains that after Cranford’s efforts to purchase his ownership in the partnership failed, Cranford conspired with Martin to obtain Dixie Stone employment with the Mississippi Goat Farming Association, a group that was in competition with the Campbell-Stone business. As to damages, Campbell assigns his $155,000 loss to the failure of the partnership. He argues that if in this Court’s opinion Dixie Stone is entitled to one-half of any recovery, then he is entitled to an award of $77,500.
¶ 12. In response to the motion for summary judgment, Campbell submitted several documents evincing his theories of tortious interference with his partnership. His first exhibit is a canceled check showing that Cranford .loaned Dixie Stone $2,500 in August of 1993, presumably for the purpose of starting her partnership with Campbell, although the check does not reflect such. Although Campbell conceded that his loan was legitimate, he insists that 'this loan was the beginning of Cranford’s efforts to sabotage the partnership. The next exhibit submitted by Campbell was a promissory note establishing that in October of 1994, Charles Stone and his wife, Dixie, borrowed $20,000 from Cranford. The two put up their home as collateral for the loan. The document evidencing the loan does not state for what the purpose the loan was made, but Campbell argued in his response to the summary judgment motion that the loan was given to the Stones when the problems with the partnership began.
¶ 13. Campbell also attached to his response a letter dated March 31, 1995, written by Charles Stone to Wallace R. Gunn, an attorney handling the loans between the Stones and Cranford. The letter instructs Gunn to stop payment on two checks issued by Cranford to the Stones in the amount of $16,514.50 and $10,258.59, respectively. The purpose of the loans was for Dixie Stone’s purchase of boar goats from the receivership. Charles Stone explained in the letter that his wife had suffered emotional and mental abuse from the actions of her partner and decided not to purchase the goats. Therefore, the financial assistance of Cranford was not needed. Campbell contends that this letter shows Cranford’s conspiracy with Leslie Martin to “realign” the Stones with the Mississippi Goat Farming Association so that together the Stones and the Association could profit in the goat rearing business using the alternative and more expensive breeding method opposed by Campbell in his partnership. Next, Campbell submitted a copy of a complaint filed by Alpha Omega Kappa, Inc. and Charles Stone against Leslie Martin on May 23, 1995. The complaint charges Martin with failing to sign a standard promissory note in connection with $15,000 that was loaned to her by Alpha Omega Kappa, Inc. and Charles Stone and demands repayment of the loan. Campbell argues that the complaint shows Charles Stone and Cranford’s aspirations to “curry favor” with Martin on behalf of Dixie Stone.
¶ 14. On appeal, Cranford contends that summary judgment was properly granted *1037 because there exists no material facts in dispute and that Campbell has failed to set out sufficient facts and set forth sufficient evidence in response to the motion for summary judgment showing that he could establish a claim for tortious interference with a business contract. Cranford relies on an excerpt from a deposition taken prior to the liquidation of the partnership. In the deposition, Campbell stated: “Mr. Cranford was the go-between me and them, the way I got it, and he is a money investor, and I just kind of think that he was trying to help us both.” In the same deposition, Campbell also made the comment, “I got some more answers why I got out of it,” indicating that there were other ■ reasons why he elected to end his partnership with Dixie Stone, though the deposition excerpts provided to us on appeal do not reveal the “other” reasons. Cranford also points us to deposition testimony taken for the liquidation proceedings in which he testified that Campbell indicated to him that if he (Campbell) agreed to sell his portion of the business he would be willing to finance a portion of the deal for the Stones. This testimony indicates that Campbell knew that Cranford was acting as an agent for the Stones. Based on these deposition excerpts, Cranford concludes that Campbell is unable to establish the essential elements of his claim.
¶ 15. First, it must be noted that Mississippi recognizes two similar but different causes of action involving a defendant’s interference with a business. There is the action of tortious interference with a contract, and there is claim for tortious interference with business relations. “[Tjortious interference with business relations occurs when a person unlawfully diverts prospective customers away from one’s business, and this tort is sometimes referred to as ‘malicious injury to business.’ ” Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 48 (¶ 10) (Miss. 1998) (citation omitted). To the contrary, a claim of tortious interference with a business contract occurs “when a person causes another to breach a contract with some third person, the tort is of interference with performance of a contract.” Id. at 48 (¶ 8). Based on the facts of this case, it is clear that a claim of interference with business relations is not asserted as Campbell’s complaint focuses on Cran-ford’s actions which he alleges caused the dissolution of the partnership agreement. Nowhere does Campbell suggest that interference by the defendants somehow diverted customers away from the partnership.
¶ 16. To show that summary judgment was not appropriate, Campbell was required to come forward with evidence by way of affidavits or other documents showing that material facts were in dispute regarding the elements of tortious interference with a business contract which are as follows:
1) that the acts were intentional and willful;
2) that they were calculated to cause damage to the plaintiffs in their lawful business;
3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
4) that actual damage and loss resulted. Par Indus., Inc., 708 So.2d at 48 (¶ 8.). Additionally, a plaintiff alleging interference with a contract must show that an enforceable obligation existed between the plaintiff and another party and that the contract would have been performed but for the interference of the defendant. Id.
¶ 17. The deposition excerpts, pleadings, and other documents submitted by Campbell fail to make a sufficient showing on the essential elements of his case. First, Campbell has not shown that Cran-ford’s actions were done willfully, intentionally, and were specifically calculated to cause the breach of his partnership agreement. All we have on these elements are Campbell’s accusations. The fact that *1038 Cranford loaned money to Dixie Stone for the start of the business hardly shows that he intended on later sabotaging the partnership. Subsequent loans to the Stone’s, if even for the purpose of allowing Dixie Stone to purchase boar goats from the receivership, again does not establish that Cranford intended to cause the break up of the Campbell-Stone partnership. The fact that Cranford may have counseled Dixie Stone to use the “flushing” breeding method also fails to support a theory that he intended to cause harm to the partnership, especially if he believed that doing so would earn more money for the partners. Even further, Cranford’s efforts to purchase from Campbell his interest in the boar goat business on behalf of the Stones does not reflect any ill motive on Cran-ford’s part to maliciously cause the demise of Campbell’s business.
¶ 18. In addition, the evidence submitted by Campbell fails to show even remotely that Cranford’s involvement with the Stones was for “the unlawful purpose of causing damage” to Campbell. We note that Campbell was not required to come forward in opposition to the motion with conclusive evidence of Cranford’s inappropriate actions, but he was required to come forward and make a sufficient showing to establish the essential elements on which he would have the burden of proving at trial. Having reviewed all that was provided in support of and against the motion for summary judgment, we conclude that the trial court did not err in granting summary judgment in favor of Cranford.
¶ 19. Lastly, Campbell contends on appeal that the circuit court erred in granting summary judgment in favor of Alpha Omega Kappa, Inc. As Cranford contends, his company was not named as a defendant in this action; rather, the complaint was addressed to him “individually and as agent/owner of Alpha Omega Kappa, Inc.” Campbell’s claim that the trial court erroneously granted summary judgment in favor of the company is misplaced. Having reviewed the complaint and those named as defendants, we find that Campbell only named Cranford individually and did not designate Alpha Omega Kappa, Inc. as a party defendant. Accordingly, the circuit court’s order of summary judgment was properly directed to Cranford, individually and as agent/owner of Alpha Omega Kappa, Inc.
¶ 20. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
LEE, J., NOT PARTICIPATING.