760 So.2d 12 (1999)
Wesley T. ROEBUCK and Hortense I. Roebuck, Appellants,
v.
Helen J. McDADE, Appellee.
No. 98-CP-00561-COA.
Court of Appeals of Mississippi.
September 21, 1999.
Wesley T. Roebuck, Appellant, pro se.
J. Niles McNeel, Louisville, for Appellee.
EN BANC.

ON MOTION FOR REHEARING
PAYNE, J., for the Court:
¶ 1. On motion for rehearing, the motion is granted and the original opinion is withdrawn and this opinion substituted.

PROCEDURAL POSTURE
¶ 2. This case is before the Court challenging the summary judgment entered in favor of Helen McDade against Wesley and Hortense Roebuck in their suit seeking compensation for an alleged defective title opinion issued by McDade in 1975. *13 Feeling aggrieved, the Roebucks perfected this appeal.

ISSUE PRESENTED
¶ 3. The Roebucks, unrepresented by counsel, present ten issues for our review, all of which relate to the trial court's summary disposition of this case in favor of McDade. Upon review of the Roebucks's brief, we have consolidated the Roebucks's claims that all essentially challenge the motion for summary judgment so as to streamline our consideration of this issue. Thus, we resolve the following issue herein: whether the circuit court erred in granting McDade's motion for summary judgment. After reviewing the record and briefs submitted by the parties, we find that the circuit court properly granted summary judgment in favor of McDade. Accordingly, we affirm the court below.

FACTS
¶ 4. On April 2, 1974, Wesley Roebuck executed a "Request for Title Opinion and Legal Services" to attorney Helen J. McDade. This request specified that McDade was to conduct her title research and issue her opinion as to the quality of title in accordance with the guidelines set out by the Farmers Home Administration (FmHA). On August 20, 1974, McDade issued a "Preliminary Title Opinion" specifying that the property in question, based on an examination covering November 1, 1972 until August 16, 1974, was vested in the Roebucks as joint tenants with full rights of survivorship. Four encumbrances were identified: taxes for the year 1974, an oil and gas lease to Amoco, a reservation of mineral rights, and a right of way deed to Kemper County. The preliminary opinion stated that in order for FmHA to obtain a lien on the property, the Roebucks would have to execute a security agreement.
¶ 5. On January 6, 1975, McDade issued a final title opinion covering from August 16, 1974 until December 23, 1974. In this final opinion, McDade again found that the Roebucks were vested with fee simple title in the property subject to the FmHA's second deed of trust and any encumberances approved by the FmHA. Further, Paragraph IV of the final opinion set out that the term "encumbrances" as used in the opinion meant any encumbrance that would prevent the United States from obtaining the required lien on the property.
¶ 6. On April 28, 1995, Roebuck filed this action seeking damages for a defective title opinion issued by McDade in 1975. In 1993, Roebuck discovered an air easement held by the United States Navy executed and recorded in 1959 allowing the Navy airspace rights as well as access to the land in question in order to clear the airspace subject to the easement. McDade did not disclose this easement in her title work conducted in 1974 and 1975. After discovery commenced, McDade filed a motion for summary judgment in this matter. Along with her motion, McDade provided an affidavit from Lamar C. Madison, a former FmHA supervisor for Kemper County. In that affidavit, Madison averred that the FmHA did not consider air easements as encumbrances and did not require that such easements be shown as an exception in title opinions.
¶ 7. The Roebucks responded, maintaining that the affidavit of Lamar C. Madison was false and insufficient to support summary judgment. Roebuck maintains that Madison was not an FmHA employee in Kemper County during this time and was not a party to his transaction. Roebuck maintains that the proper persons who could provide information relevant to his case was Gordie Hare, Jr., the FmHA manager in Kemper County at the time of the transaction, Hare's administrative assistant, Mary Clay, or Roland Graham, Jr., the assistant manager of FmHA in Kemper County at the time of the Roebucks's transaction and the person who personally administered this loan.
¶ 8. On March 26, 1998, the circuit judge, based on the July 11, 1996 affidavit *14 of Lamar C. Madison and the Roebucks failure to produce any counter affidavits, granted McDade's motion for summary judgment. The Roebucks, after unsuccessfully seeking to have that decision set aside, perfected this appeal. Based on our review of the limited record, we are constrained to affirm the trial court's decision.

STANDARD OF REVIEW
¶ 9. We begin by stating the familiar standard of review with regard to a trial court's grant of summary judgment. "The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." Aetna Cas. and Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996) (citing Mantachie Natural Gas v. Miss. Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992)). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997); Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss.1995). The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990). We do not try issues. Rather, we only determine whether there are issues to be tried. Townsend v. Estate of Gilbert, 616 So.2d 333, 335 (Miss.1993). Furthermore, it is well-settled that motions for summary judgment are to be viewed with a skeptical eye, and if a trial court should err, it is better to err on the side of denying the motion. Aetna Cas. and Sur. Co., 669 So.2d at 70 (citing Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss. 1986)). The focal point of our de novo review is on material facts. In defining a "material" fact in the context of summary judgments, the Mississippi Supreme Court has stated that "[t]he presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense." Simmons v. Thompson Mach. of Miss., 631 So.2d 798, 801 (Miss.1994) (quoting Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985)) (emphasis added).

ANALYSIS AND DISCUSSION
¶ 10. Our standard of review established, we now turn to the merits of the Roebucks's claim.

I. WHETHER THE CIRCUIT COURT ERRED IN GRANTING MCDADE'S MOTION FOR SUMMARY JUDGMENT
¶ 11. The Roebucks maintain that the circuit court erred in granting McDade's motion for summary judgment. We disagree and overrule this assignment of error. As the circuit judge set forth in his order granting summary judgment to McDade, the Roebucks brought forth no counter affidavits to challenge the affidavit of Lamar C. Madison regarding the procedures of the FmHA. The Roebucks emphasize the fact that Madison was not involved with their particular transaction. While this is apparently true, it is irrelevant. In Madison's July 11, 1996 affidavit, he attested to the fact that he was an FmHA employee with personal knowledge about the FmHA guidelines and that those guidelines did not require that air easements be disclosed as exceptions to clear title. While the Roebucks maintained that Roland Graham, Jr. told Wesley Roebuck that the air easements were not excluded as an encumbrance, the Roebucks offered no affidavit from Graham. Thus, the trial judge was left with the unchallenged affidavit of Lamar Madison and the Roebucks's claims that Graham disputed Madison's assertions.
¶ 12. M.R.C.P. 56(e) provides:

*15 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
The Roebucks were unable to provide any evidence, other than their own assertions, that the information averred to by Madison was false or otherwise incorrect. While this inability to procure such contrary evidence is unfortunate for the Roebucks, this inability is not sufficient to defeat McDade's motion for summary disposition. See Franklin v. Thompson, 722 So.2d 688, 692 (Miss.1998). Further, the trial court complied with M.R.C.P. 56(f) by allowing the Roebucks additional time to file responsive pleadings after their requests for interrogatories from non-parties to the litigation were disallowed.
¶ 13. In his request for legal services from McDade on April 2, 1974, submitted on FmHA form 427-1, Wesley Roebuck asked that McDade "prepare a title opinion and perform loan closing and other legal services in accordance with instructions and requirements of the Farmers Home Administration...." In the final title opinion issued by McDade on January 6, 1975, on FmHA form 427-10, Paragraph IV of that document reads as follows: "The term `encumbrances, reservations, exceptions, and defects' means all matters which would prevent the United States from obtaining the required lien on the property...." The easement of which the Roebucks now complain was held by the United States in the name of the United States Navy. While unquestionably a prudent attorney would disclose such an easement, McDade was not required to do so under the request for services made by Wesley Roebuck.
¶ 14. As the Roebucks failed to present any evidence to defeat that evidence submitted by McDade with her motion for summary judgment and given the language from Form 427-10 cited above, the trial judge had no choice but to grant McDade's motion and to enter summary judgment against the Roebucks.
¶ 15. Notwithstanding the aforementioned reasoning, another point exists in support of our conclusion that the trial court did not err in granting summary judgment on this matter. The instructions attached to the "Request for Title Opinion" form describe the processes to follow and time periods that apply when title insurance is not obtained in initial loan cases.
¶ 16. Instructions in Section IV, Paragraph II B 2, entitled "Examination of TitlePeriod of Title Search," are as follows:
In initial loan cases when title insurance is not obtained, the title search must cover the shortest period necessary to include one of the following:
A A warranty deed from a party other than the United States which has been of record for at least 40 years.
B A Farm Ownership, Farm Housing, or individual Soil and Water Conservation (not Water Facilities) security instrument.
C A patent or deed from the United States, except that where such patent or deed recorded within 40 years was issued under the Federal homestead or reclamation laws where title is held under but a patent or deed has not been *16 issued under such laws, the search must cover either 40 years or the period necessary to include the entry or purchase contract, whichever is shorter. (Added: 7/13/78 PN 928)
¶ 17. While these instructions describe procedures to follow when title insurance is not obtained, they are silent concerning what to do if title insurance is obtained, as happened in the case sub judice. In the present case, the title search covered only two years. Though not stated literally in the instructions, logic dictates the time period is shorter in cases in which title insurance is obtained than when it is not. Since the Farmers Home Administration accepted the two year term as sufficient and required McDade to search no further, we reach the inescapable conclusion that no liability can attach to McDade's failure to search further back to reach the easement.
¶ 18. For the reasons set forth above, we find the trial judge did not err in granting the summary judgment. Accordingly, we affirm the trial court's grant of summary judgment.
¶ 19. THE JUDGMENT OF THE KEMPER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANTS.
KING, P.J., DIAZ, IRVING, AND THOMAS, JJ., CONCUR.
McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., BRIDGES AND LEE, JJ.
MOORE, J., NOT PARTICIPATING.
McMILLIN, C.J., dissenting:
¶ 20. I dissent. I would reverse and remand for further proceedings. The trial court, in granting summary judgment, relied upon an affidavit of a former federal employee stating that an air space encroachment easement was not required to be shown as an exception on a Farmers Home Administration title certificate. The former employee, in his affidavit, cited no authority, rule, or federal regulation in support of his assertion that air space easements were exempt from disclosure. Roebuck countered that affidavit with his own, quoting from the governmental title certificate forms themselves that seem to require a title examiner to reveal, without reservation, all "leases, easements, and mineral reservations" that "would prevent the United States from obtaining the required lien on the property...."
¶ 21. At best, the former employee's affidavit indicates that the local Farmers Home Administration office may have had a standing policy of waiving air space easements of the nature belatedly discovered in this case. That policy, if such a policy existed, would not override the mandatory provisions of the governmental regulations pertaining to the title examination process, which seem to require that such exceptions be revealed. Assuming that the loan applicant has standing to complain of defects in the title examination even though the certificate is actually issued to the Farmers Home Administration (a proposition that appears highly likely in view of the Mississippi Supreme Court decision in Century 21 Deep South Prop. v. Corson, 612 So.2d 359, 374 (Miss.1992)), the situation could easily arise where a disclosed easement might affect the applicant's decision to conclude the sale even though the Farmers Home Administration, in its capacity as the mortgage lender, was perfectly willing to advance the loan funds despite the existence of the easement. Thus, whether (a) such easements must be disclosed as title exceptions and (b) whether the lending agency is prepared to issue an administrative waiver to the title exception are two distinct matters. The employee's affidavit seems to principally address the latter concern while the suit before us involves the former.
¶ 22. It is, therefore, my opinion that the former governmental official's affidavit concerning his employing agency's readiness *17 to waive an exception for existing air space easements does not resolve the issue of potential liability of a title examiner who totally fails to disclose the existence of such an easement. The examiner's duty to disclose an existing air space easement remains an unresolved issue of material fact; therefore, summary judgment is not appropriate. M.R.C.P. 56; Dethlefs v. Beau Maison Dev. Corp., 458 So.2d 714, 716 (Miss.1984).
¶ 23. The majority, beginning at ¶ 14 of its opinion, advances an alternative reason to affirm the grant of summary judgment. The majority quotes from the instructions issued by the Farmers Home Administration to the examining attorney concerning the required period of the title search and notes that the instructions apply only "[i]n initial loan cases when title insurance is not obtained...." The majority then notes that title insurance was, in fact, required in this case and states that "logic dictates the time period is shorter in cases in which title insurance is obtained than when it is not." Then the majority observes that the certificate indicated a search of only two yearsa period not far enough back to detect the air easement and excuses McDade's failure to detect the air easement on that basis.
¶ 24. With respect to my colleagues in the majority, I fail to see how the provision of title insurance would permit a shorter examination period than if title insurance were not being provided. If title insurance were being provided, there would be no need for any additional examination period to be certified directly to the lender since the insurance policy serves the purpose that would otherwise be accomplished by the examining attorney's certificate to the lender.
¶ 25. Of course, as a practical matter, the title insurance company itself would not issue such a policy without an exhaustive examination of the title, which, in most cases (and apparently in this case) is a duty accomplished by the closing attorney. The notion that a closing attorney's liability to a purchaser/borrower for the failure to detect an outstanding easement would hinge on whether the closing attorney was searching the title to certify her findings to a title insurance company rather than directly to the lender is a proposition that I am not prepared to accept.
¶ 26. This case comes to us in a most unfortunate posture. Even the most cursory review of the record in this case reveals that the pleadings were poorly drawn by pro se litigants and that the Roebucks had only the vaguest notion of what was required of them in defending against a summary judgment motion. Nevertheless, it is my opinion that the Roebucks have successfully pled a malpractice claim against McDade for her failure to discover and disclose the air easement, whether that duty arose in connection with her certification of the title directly to the Farmers Home Administration or whether it arose in connection with her certification of the title to the issuing title insurance company. I am also of the opinion that the affidavit of a retired government employee concerning his view of the applicable federal regulations was not enough to defeat that less-than-artfully-pled claim on summary judgment.
¶ 27. The sole legitimate issue presented on appeal, in my view, is what weight was to be given to this former government employee's personal characterization of what he thought the regulations required in terms of disclosure of air easements. Such testimony, if offered live at trial, could not survive a "best evidence" challenge since the best evidence of what the regulations require is the regulations themselves, and not someone's characterizations or recollections of what those regulations might have required. A condition for evidence to be presented by affidavit in a summary judgment proceeding is that the affidavit "set forth such facts as would be admissible in evidence...." M.R.C.P. 56(e). In my view, this former official's musings about the contents of detailed federal regulations fails on this account and is *18 not a proper foundation for summary judgment.
¶ 28. Having so concluded, I also think it is wrong to cast about, as the majority does, for other alternative reasons to affirm that were neither raised at the trial level nor briefed to this Court. There are a multitude of other significant concerns regarding the viability of this litigation. However, they are not properly before us and I would not raise them on our own motion. Based on the limited reasons advanced by the trial court to grant summary judgment in this case, I would reverse and remand for further proceedings.
SOUTHWICK, P.J., BRIDGES, AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.