RUSSELL, J.,
for the Court:
¶ 1. BancorpSouth Bank appeals the Lafayette County Chancery Court’s grant of summary judgment in favor of the appel-lees. On appeal, BancorpSouth argues the chancery court erred by (1) granting summary judgment when a genuine issue of material fact exists relating to its knowledge or lack thereof of the four unit owners’ [1] conveyances, (2) shifting the burden of production to BancorpSouth on summary judgment, (3) allowing the appellees to raise the affirmative defenses of waiver and ratification over BancorpSouth’s objection, and (4) finding that the four unit owners’ motion for summary judgment applied to the guarantors when the guaranty clearly and unambiguously waived their right to assert the defenses raised. We affirm the chancery court’s grant of summary judgment as to the four unit owners and reverse and remand as to the guarantors.
FACTS AND PROCEDURAL HISTORY
¶2. In March 2001, Claiborne Frazier, Robert Crumpton, and Shelby Brantley Jr. formed an entity known as Van Burén Group LLC (Van Burén). Frazier served as the manager of Van Burén and acted on its behalf. That same year, Van Burén applied for a loan with BancorpSouth for the construction of a thirty-unit condominium project in Oxford, Mississippi. On August 20, 2001, BancorpSouth loan officer, Bobby Little, issued a Commitment Letter to Van Burén for a loan in the amount of $5,400,000. The closing and funding of the loan contained a condition precedent, requiring Van Burén to present evidence of the sale of eighteen units through contracts and the collection of earnest money equal to ten percent of the sales price. The condition also provided that if eighteen condo units were not pre-sold, then *364 the amount of the letters of credit accepted would be the difference between eighteen and the number of units that were pre-sold.
¶ 3. On August 23, 2001, Bobby Coving-ton of Taylor, Covington, and Smith, P.A., acting as counsel for Van Burén, issued certification that nineteen condo units had been issued by Frazier under contract. This certification included contracts for unit 203 sold to John and Lynn Albriton and unit 102 sold to Shane Langston. Langston and the Albritons are appellees in this matter.[2] On September 5, 2001, Van Burén executed a land Deed of Trust to BancorpSouth, conveying BancorpSouth a secured interest in the property on which the condominiums would be built. The land deed of trust contained a “due on sale” clause requiring proceeds of any sale to be paid directly to BancorpSouth. The deed was recorded in Lafayette County, Mississippi, on September 12, 2001.
¶ 4. Each individual member of Van Bu-rén, including Frazier, Brantley, and Crumpton, signed a guaranty on the $5,400,000 promissory note, agreeing to be held liable for the debt owed by Van Bu-rén. Under the guaranties, each member agreed to preemptively waive any and all defenses with the exception of the defense of discharge by payment in full. In November 2002, Bobby Little was transferred, and Ron Winford became the new loan officer for the Van Burén construction loan.
¶ 5. By November 2002, Frazier had conveyed more condo units under contract, including those sold to Susan Bryan and Norma Bourdeaux, also appellees in this matter. On August 23, 2003, Bancorp-South began receiving proceeds from the sales of twenty condo units. On May 19, 2004, units 305 and 306 sold to John Lee were released from BancorpSouth’s mortgage. BancorpSouth released from its mortgage an additional unit, 307, sold to Lee on June 23, 2004. Unit 210, sold to Tim Ford on October 9, 2004, was also released from BancorpSouth’s mortgage. BancorpSouth received no consideration for releasing from its mortgage the units sold to Ford and Lee, except $50,000 paid by Lee in exchange for a partial release for unit 307. The proceeds from the sales were to be credited to Van Buren’s debt. After paying $4,917,646, Van Burén defaulted on the loan.
¶ 6. On October 1, 2007, BancorpSouth began foreclosure proceedings against Van Burén. BancorpSouth allegedly discovered that proceeds generated from five condo units had not been remitted. These units included those sold to the appellees: the Albritons, the Bryans, Langston, and Bourdeaux.[3] BancorpSouth filed an amended complaint on October 17, 2007. The appellees filed a motion for summary judgment on November 18, 2010, which was subsequently joined by Brantley and Crumpton[4] on November 29, 2010.
¶ 7. A hearing on the motion was held on February 17, 2011. The chancery court granted summary judgment in favor of the appellees. BancorpSouth now appeals.
DISCUSSION
I. Whether the grant of summary judgment was proper.
A. Standard of Review
¶ 8. “The standard for reviewing the granting or the denying of summary judg *365 ment is the same standard as is employed by the trial court under Rule 56(c).” Evans v. Jackson Gocar-Cola Bottling Co., 771 So.2d 1006, 1008 (¶ 5) (Miss.Ct.App. 2000) (quoting Roebuck v. McDade, 760 So.2d 12, 14 (¶ 9) (Miss.Ct.App.1999)). “This Court conducts [a] de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.” Id. “The evidence must be viewed in the light most favorable to the party against whom the motion has been made.” Id. “The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought.” Id.
B. Applying the Pongetti Credit Principle
¶ 9. Under Mississippi law, with regard to the effect that out-of-trust sales have on the remaining debt owed to a mortgagee/lienor on a piece of property, the general rule is as follows:
[Wjhere a mortgagor or other lienee has alienated a portion of the mortgaged premises, and the mortgagee or other lienor, having notice of such alienation, releases the mortgage or other lien as to the portion retained by the mortgagor or lienee, such mortgagee or lienor must deduct from the debt, before enforcing his lien against the property alienated, the value of the property released.
Pongetti v. Bankers Trust Sav. & Loan Ass’n, 368 So.2d 819, 823 (Miss.1979) (quoting 110 A.L.R. 67 (1937)).
¶ 10. Subsequent to the four unit owners’ condo purchases, BancorpSouth released from its mortgage a total of three condo units; two of which were sold to Lee for $399,000, and the other sold to Ford for $220,000. BancorpSouth released these three units from its lien for no consideration. Another unit sold to Lee for $300,000 was later released from Bancorp-South’s mortgage in exchange for $50,000 paid by Lee.
¶ 11. A review of the record shows that as of January 23, 2004, the Van Burén construction loan had an outstanding balance of $1,530,763.80. From this date up until March 3, 2008, BancorpSouth had received a total of $1,068,287.20 paid toward the outstanding balance of the loan. If we were to apply the credit principle of Pongetti to the present case, Bancorp-South would be required to take the value of the four units sold to Ford and Lee minus the $50,000 paid by Lee, which equals $869,000, and combine it with the proceeds paid against the debt, which would equal $1,937,287.20. BancorpSouth would then be required to deduct this value from the total outstanding balance of the loan, which, in this case, would fully extinguish the debt.
C. The Notice Requirement
¶ 12. BancorpSouth argues that in order for the Pongetti credit principle to apply, it must be shown that Bancorp-South had actual knowledge of Frazier’s conveyances to the four unit owners. According to BancorpSouth, the four unit owners were under a duty to put Bancorp-South on notice of their conveyances and inform BancorpSouth of their interests in the property. The four unit owners contend that under Pongetti, there is no requirement of actual notice, but if there was such a requirement, it is BancorpSouth’s notice of the units sold out of trust to Ford and Lee that is required, rather than notice of the four unit owners’ conveyances.
¶ 13. Even if we were to adopt BancorpSouth’s interpretation of actual notice under Pongetti, a review of the record shows that BancorpSouth did, in fact, have notice of the four unit owners’ convey- *366 anees. In his deposition, Winford, loan officer for BancorpSouth, admits receiving memoranda from Frazier in July 2002, and again in November 2002, listing the condo units sold under the Van Burén construction loan. The lists contained the name of each unit purchaser, the unit number, and the purchase price of each unit. The Bryans, the Albritons, Langston, and Ford are all listed on both memoranda.
¶ 14. In his deposition, Winford also acknowledges BancorpSouth’s receipt of an appraisal from Van Burén, dated August 21, 2001, which lists the units conveyed to Langston and the Albritons as “sold,” in addition to the appraisal value and the purchase price of each unit. Certification from Taylor, Covington and Smith, P.A., on behalf of Van Burén, was issued to BancorpSouth listing the units, along with the name of each purchaser, and the amounts of deposits of earnest money for each unit. This certification included the units conveyed to the Albri-tons and Langston.
¶ 15. Perhaps the most confirmative piece of evidence that shows BancorpSouth had knowledge of the four unit owners’ conveyances is a memo dated April 8, 2004, which Winford admits he personally prepared for James Stringer, BancorpSouth’s credit administrator. The memo served as a follow-up from a meeting that took place on April 1, 2004, among Winford, Stringer, and Frazier. In the memo, Winford lists the outstanding balance on the Van Burén construction loan, which was $1,530,764, and notes the status of the loan as follows: “As of this memo, 25 of the 30 units have been sold and delivered. Two of the five remaining units are contracted and special changes/additions are being completed.”
¶ 16. This memo pre-dates Bancorp-South’s release of the units sold to Ford and Lee from its mortgage. A review of the record shows that as of the date of this memo, BancorpSouth had only issued partial releases for sixteen units canceling its lien, even though twenty-five units had already been sold and delivered. Six of those units without partial releases included those sold to Langston, Bourdeaux, the Bryans, the Albritons, and two units sold to Lee.
¶ 17. In viewing the evidence in the light most favorable to BancorpSouth, based on a review of the record, we find that BancorpSouth had actual knowledge of the conveyances to the four unit owners. BancorpSouth contends that because the four unit owners did not personally impart actual notice of their conveyances, the credit principle does not apply. However, we find that no such duty on the part of the four unit owners is required under Pongetti As a matter of law, the four unit owners have the right to receive a credit for the value of the property that Bancorp-South released to Ford and Lee paid against the outstanding debt of the Van Burén loan.
¶ 18. As shown above, the record is replete with evidence that BancorpSouth had knowledge of the four unit owners’ conveyances at the time it released the units sold to Ford and Lee from its mortgage. Accordingly, we find that no genuine issue of material fact exists with regard to BancorpSouth’s knowledge of the four unit owners’ conveyances. Therefore, the chancery court’s grant of the four unit owners’ motion for summary judgment was proper.[5] This issue is without merit.
II. Whether the chancery court erred by shifting the burden of production to BancorpSouth on summary judgment.
¶ 19. BancorpSouth argues that the chancery court improperly shifted the *367 burden to BancorpSouth to rebut the ap-pellees’s affirmative defenses including waiver, ratification, failure to mitigate, and unclean hands. BancorpSouth contends that the success of each of these affirmative defenses hinged on whether the appellees proved that BancorpSouth had actual knowledge of the condo sales to the four unit owners; and because the appellees failed to do so, the burden was improperly shifted to BancorpSouth to rebut.
¶20. “[0]nce a motion for summary judgment is filed the opposing party ‘must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial .... This burden of rebuttal arises, however, only after the moving party has satisfied its burden of proving that no genuine issue of material fact exists .... ” Campbell v. Cranford, 737 So.2d 1032, 1035 (¶ 9) (Miss.Ct.App.1999) (quoting Foster v. Noel, 715 So.2d 174, 180 (¶ 35) (Miss.1998)).
¶ 21. As discussed above, the record indicates that the appellees satisfied their burden of showing that no genuine issue of material fact existed as to whether Ban-corpSouth had knowledge of the four unit owners’ condo sales. Therefore, the chancery court properly shifted the burden to BancorpSouth to rebut the same. For these reasons, we find this issue is without merit.
III. Whether the chancery court erred by allowing the four unit owners to raise the affirmative defenses of waiver and ratification.
¶22. Next, BancorpSouth argues that the chancery court’s failure to dismiss the defenses of waiver and ratification from the four unit owners’ motion for summary judgment constitutes reversible error. We disagree. At the hearing, BancorpSouth objected to any testimony regarding the four unit owners’ assertions of waiver and ratification because the affirmative defenses were not raised in their initial answer. Langston stated that although the terms “waiver” and “ratification” were not specifically used, the four unit owners did initially raise estoppel, laches, and unclean hands as affirmative defenses, and asked that the court incorporate the former as affirmative defenses, as well. Langston subsequently made an ore tenus motion to amend his answer to included waiver and ratification if the court found that the defenses should have been raised specifically.
¶ 23. Although the chancery court granted the four unit owners’ motion for summary judgment, it never expressly ruled on the issues of waiver and ratification. The chancery court did not provide specific factual findings when it made its ruling. “[Wjhere the chancellor has made no specific findings, this Court will proceed on the assumption that he resolved all fact issues in favor of the appellee.” Weeks v. Thomas, 662 So.2d 581, 584 (Miss.1995) (citing Estate of Mason v. Fort, 616 So.2d 322, 329-30 (Miss.1993)). Further, in the absence of specific factual findings, we are to “assume that the [chancery] court made determinations of fact sufficient to support its judgment.” Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 367 (Miss. 1992) (citing Pace v. Owens, 511 So.2d 489, 492 (Miss.1987)).
¶ 24. Here, a ruling on the issues of waiver and ratification was not needed considering the fact that the central dispute was whether a genuine issue of material fact existed as to whether Bancorp-South had actual knowledge of the four unit owners’ condo sales at the time it released the units sold to Ford and Lee from its encumbrance. Although the chancery court gave no specific factual ba *368 sis for its ruling, the record is filled with documentary evidence supporting its judgment. A review of the record shows that BancorpSouth possessed numerous memo-randa listing the condo sales to each of the four unit owners, along with the corresponding purchase prices. BancorpSouth was in no way prejudiced by the four unit owners’ assertion of waiver and ratification because these affirmative defenses have no bearing on the court’s determination that no genuine issue of material fact exists. Accordingly, we find this issue is without merit.
IV. Whether the chancery court erred in holding that the four unit owners’ motion for summary judgment applied to the guarantors.
¶ 25. BancorpSouth claims that because the guarantors waived their right to assert any and all defenses, they should not be allowed to step into the shoes of the four unit owners in their motion for summary judgment. In signing the guaranties, the guarantors assumed full responsibility for the debt of the Van Burén loan, and agreed to preemptively waive their right to assert any and all affirmative defenses except the defense of discharge by payment in full. The relevant portion of the contract reads:
The liability of Guarantor is primary, absolute, unconditional, continuing, complete and irrevocable, and will not be discharged, except by complete and final performance of the obligations and no act need occur to establish Guarantor’s liability hereunder, irrespective of, but not limited to:
(i) the validity or enforceability of the obligations or of any security interest, mortgage or ledge granted by Borrower or by any person(s) secondarily or otherwise liable for any of the obligations ... or any other device providing collateral security for payment of the obligations, including the right of setoff against any deposits or credits[.]
(Emphasis added).
¶ 26. As previously discussed, under Pongetti once the value of the property that BancorpSouth released to Ford and Lee is credited to the outstanding balance of the loan, the debt is fully extinguished. However, we find that based on the language of the guaranties, the credit principle of Pongetti applies to the four unit owners only; and the guarantors are not entitled to the same credit. Pursuant to Pongetti a mortgagee must, as a matter of law, “deduct from the debt, before enforcing his lien against the property alienated, the value of the property released.” Pongetti, 368 So.2d at 823 (emphasis added). Before BancorpSouth may enforce its lien against the four condo units, it must credit the value of the units sold to Ford and Lee to the debt. But the application of credit only extinguishes BancorpSouth’s right to enforce its lien against the four unit owners.
¶ 27. The guarantors cannot escape responsibility under Pongetti and are still liable under the terms of the agreement. We find that a genuine issue of material fact exists as to whether Bancorp-South received full payment of the amount owed based on the funds received from the units sold. Such a determination is necessary to resolve whether the bank has received full compensation or whether there is an unpaid debt for which the guarantors must pay. For these reasons, we find that the chancery court’s grant of summary judgment in favor of the guarantors was error. Accordingly, we reverse and remand this portion of the judgment.
*369 CONCLUSION
¶ 28. For the reasons stated herein, we affirm the chancery court’s grant of the four unit owners’ motion for summary judgment and reverse and remand the case for further proceedings consistent with this opinion as to the guarantors.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE SPLIT EQUALLY BETWEEN THE APPELLANT AND THE APPELLEES.
BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., GRIFFIS, P.J., CARLTON, MAXWELL AND FAIR, JJ., NOT PARTICIPATING.

. The four unit owners were third-party purchasers of the condominium units in question. The funds from these units were not remitted to the mortgagee, BancorpSouth.

. Shane Langston is listed as Langston Oxford Properties.

. We refer to the Albritons, the Bryans, Lang-ston, and Bourdeaux collectively as “the four unit owners.”

.We refer to Brantley and Crumpton collectively as "the guarantors.”

. We discuss the grant of summary judgment as to the guarantors in issue four. In this case, the chancellor is the finder of fact, also. See M.R.C.P. 41.