ROBERTS, J.,
for the Court:
¶ 1. This appeal stems from a July 19, 2011 final judgment entered by the Harrison County Circuit Court in favor of the plaintiff, Dennis Stieffel, against the defendants, William Rodwell, Thomas Easter, Charles Tomasello, and CAL Investments LLC (collectively “CAL Investments”). The final judgment ordered a recovery in the amount of $193,217.43 to Stieffel with interest to accrue at 8% per annum. On appeal, this Court is asked by CAL Investments to determine whether the circuit court erred by granting summary judgment in favor of Stieffel on a second promissory note and settlement agreement payable to Stieffel when there were genuine issues of material fact in dispute about the promissory note, and whether CAL Investments was denied due process by not receiving notice and an opportunity to defend the claims. We affirm the judgment of the circuit court.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2008, CAL Investments was in the real estate development business and rented office space from Stieffel. The principals of CAL Investments are Rod-well, Easter, and Tomasello.[1] CAL Investments fell behind on its rent payments, and at the time it vacated the office space, it owed approximately $40,000 to Stieffel in past-due rent. On May 14, 2008, CAL Investments and its principals executed a promissory note (Note 1) payable to Stief-fel for its overdue rent. The principal sum due was $41,157.61 with 8% interest per annum. Note 1 also contained a late-fee provision that required CAL Investments to pay $50 per day per delinquent payment.
¶ 3. CAL Investments failed to make any payments under Note 1. Over time, the total balance owed by CAL Investments grew to $88,138.07 due to late fees and interest. CAL Investments persuaded Stieffel to enter into a Confidential Settlement Agreement and Full and Final Release (CSA) expressly settling and releasing all claims under Note 1. As consideration for the CSA, CAL Investments executed a new promissory note (Note 2). CAL Investments again failed to honor any of the terms of Note 2 or the CSA. Shortly thereafter, on May 12, 2009, Stief-fel filed a complaint against CAL Investments for breach of Note 1 and to collect the sum due to him in the amount of $88,138.07 plus interest and penalties.
*918 ¶ 4. On June 11, 2009, CAL Investments filed its answer and raised numerous affirmative defenses, including the following: set-off and contribution, ratification and accord and satisfaction, doctrines of laches and estoppel, and settlement and release. Its answer also included a motion to dismiss on the ground that the CSA had released CAL Investments from liability under Note 1. CAL Investments attached copies of the CSA and Note 2 as exhibits to its answer and affirmative defenses. Almost a year later on September 5, 2010, Stieffel filed a motion for summary judgment claiming there was no genuine issue of material fact that Note 1 was still enforceable because he never signed the CSA, received original copies of the CSA, or received the $10,000 payment required upon the execution of the CSA. Thus, Stieffel claimed the CSA was never properly executed and did not serve as a release or accord and satisfaction of CAL Investments’ liability on Note 1. CAL Investments responded to Stieffel’s motion for summary judgment and claimed that the CSA was valid and settled all claims as to Note 1. The circuit court held a hearing on the summary-judgment motion on August 13, 2010.
¶ 5. At the hearing, Stieffel requested that the circuit court grant summary judgment in his favor on Note 1, “or[,j in the alternatively,] if the [circuit c]ourt determines that there exist[s] a genuine issue of material fact[,] that [the circuit court] enter a judgment for the amount that [CAL Investments has] confessed [is] due and owing under the terms of [Note 2 and the CSA].... ” CAL Investments reiterated that Note 1 was settled and released by the execution of Note 2 and the CSA. As evidence, it submitted Note 2, the CSA, and emails between the parties’ attorneys negotiating the terms of Note 2 and the CSA. It also argued that if Note 1 was enforceable, then the late fees imposed were unconscionable, excessive, and penal in nature. After hearing from both parties, the circuit court said: “[I]f I were to assume that [CAL Investments’ argument] is correct ... [that the CSA released it from liability on Note 1,] then is this court in a position that it is to now ... enforce the settlement?] ” (Emphasis added). The circuit court requested both Stieffel and CAL Investments provide it with “anything additional” on that issue.
¶ 6. On August 27, 2010, as the circuit court requested, CAL Investments filed a memorandum of authorities in support of its opposition to Stieffel’s motion for summary judgment. In the memorandum, CAL Investments again reiterated its position that the execution of the CSA settled all issues related to Note 1; however, it noted that whether or not an attorney had agreed to a settlement on his client’s behalf is a question of fact sufficient to preclude granting summary judgment in Stieffel’s favor. The memorandum also alleged that the late fees on Note 1 were unconscionable and should not be enforced against CAL Investments. Lastly, CAL Investments’ memorandum claimed that the circuit court could not enter a judgment in favor of Stieffel on Note 2 because Stieffel did not mention the facts of Note 2 and the CSA in his complaint, nor did he request relief on Note 2 in either his complaint or motion for summary judgment. The memorandum did not address whether any of the fees or provisions in Note 2 and the CSA were unenforceable against CAL Investments.
¶ 7. The circuit court entered its order on September 20, 2010, finding that Note 2 and the CSA were validly executed and binding on the parties; as a result, Note 1 was no longer enforceable. As to Note 2 and the CSA, the circuit court stated:
*919 [CAL Investments has] in effect sought enforcement of the settlement agreement. In other words, [it has] raised the settlement as a defense to having to pay any claims related to [Note 1] and [has] sought to enforce that settlement to prevent [Stieffel] from recovering on [Note 1]. As [CAL Investments has] argued, the agreement reached by the attorneys is enforceable as to [Stieffel], It is also enforceable as to [CAL Investments].
[[Image here]]
[CAL Investments] cannot rely on the [CSA] and yet disavow [its] obligations under that agreement. The issue has been properly raised by [CAL Investments] in its [a]nswer, its [m]otion to [d]ismiss[,] and its response to [the motion for summary judgment].
Ultimately, the circuit court denied Stief-fel’s motion for summary judgment as to Note 1 but granted summary judgment in favor of Stieffel as to the enforcement of Note 2 and the CSA.
¶ 8. On September 30, 2010, CAL Investments filed a motion for reconsideration or, in the alternative, a motion to alter or amend the judgment, claiming that the issue of the enforcement of Note 2 and the CSA was not properly before the circuit court and that it did not have the opportunity to argue that the late fees on Note 2 were a violation of Mississippi law. Then, on January 18, 2011, after employment of new counsel, CAL Investments filed a memorandum in support of its September 30, 2010 motions. In this memorandum, it claimed it was taken by surprise when the circuit court granted summary judgment in favor of Stieffel on Note 2 and the CSA because it never had the opportunity to defend the enforcement of Note 2 and the CSA. The circuit court entered an order on March 22, 2011, denying CAL Investments’ September 30, 2010 motions. The circuit court did permit CAL Investments an additional fifteen days to brief the issue of the unconscionability of Note 2’s late-fee provisions; Stieffel was given fifteen days from the day CAL Investments’ brief was submitted to respond.
¶ 9. On July 19, 2011, the circuit court entered its final judgment requiring CAL Investments to pay Stieffel $193,217.43 in damages, with interest to accrue at 8% per annum. Feeling aggrieved, CAL Investments appealed. In its brief, CAL Investments asserts twenty-two issues; however, all these issues can be combined into two general categories:
I. Summary judgment was not justified under Mississippi Rule of Civil Procedure 56.
II. [CAL Investments was] not allowed reasonable opportunity to defend against the enforcement of Note 2 [and the CSA].
ANALYSIS
¶ 10. When reviewing a circuit court’s decision to grant or deny a motion for summary judgment, we apply a de novo standard of review. Moss v. Batesville Casket Co., 935 So.2d 393, 398 (¶ 15) (Miss.2006). The evidence is viewed in the light most favorable to the nonmoving party. Dailey v. Methodist Med. Ctr., 790 So.2d 903, 907 (¶ 3) (Miss.Ct.App.2001) (citing Roebuck v. McDade, 760 So.2d 12, 14 (¶ 9) (Miss.Ct.App.1999)). “The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought.” Id.
I. Summary Judgment
¶ 11. CAL Investments requests this Court reverse and remand this case for a trial on the merits because the circuit court erroneously granted summary judg *920 ment on the enforceability of Note 2 and the CSA. Pursuant to Mississippi Rule of Civil Procedure 56(c), summary judgment should only be granted when there is no genuine issue of material fact. “[T]he [circuit] court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried.” Brown v. Credit Ctr. Inc., 444 So.2d 358, 362 (Miss.1983).
¶ 12. CAL Investments asserts that there was a factual dispute as to whether Note 2 and the CSA were enforceable, and this dispute was sufficient to require the circuit court to deny summary judgment. Further, CAL Investments asserts that by raising Note 2 and the CSA as an affirmative defense to Note 1, it did not intend to have Note 2 and the CSA’s enforceability raised as an issue, nor did it consent to amending Stieffel’s complaint to reflect this new claim. It additionally argues that it was denied due process on claims regarding enforceability of Note 2 and the CSA because these issues were not in Stieffel’s original complaint and were not raised until the summary-judgment hearing. Thus, CAL Investments claims it did not have proper notice and a reasonable opportunity to defend against these claims. In its second issue, CAL Investments argues that the circuit court erred in not considering its claim that the fees on Note 2 were usurious, making Note 2 and the CSA unenforceable. This argument is actually the second prong to CAL Investments’ claim that it was denied due process because it did not have a reasonable opportunity to be heard on its defenses to the enforcement of Note 2 and the CSA. We will address all of CAL Investments’ due-process claims later in this opinion.
¶ 13. After a thorough review of the record, we affirm the circuit court’s denial of Stieffel’s motion for summary judgment on Note 1 because we conclude no genuine issue of material fact exists that Note 2 and the CSA acted as a valid settlement and release of Note 1. We further affirm the circuit court’s decision to enforce the terms of Note 2 and the CSA after it determined that a settlement and release, or accord and satisfaction, existed on Note 1.
¶ 14. CAL Investments’ primary argument is that there was a factual dispute as to whether Note 2 and the CSA were enforceable. It claims this dispute was sufficient to require the circuit court to deny summary judgment and have a jury determine whether Note 2 and the CSA acted as a settlement and release of Note 1. We disagree. At the summary-judgment hearing, CAL Investments presented a series of emails between its attorney and Stieffel’s attorney. The emails discussed the negotiations regarding Note 2 and the CSA. As proof that Stieffel had agreed to Note 2 and the CSA, CAL Investments submitted an email from Stief-fel’s attorney stating that once certain changes were made, Note 2 and the CSA would be “good to go.” It is well settled that “[a]n attorney is presumed to have the authority to speak for and bind his client.” Parmley v. 84 Lumber Co., 911 So.2d 569, 573 (¶ 19) (Miss.Ct.App.2005) (citing Fairchild v. Gen. Motors Acceptance Corp., 254 Miss. 261, 265, 179 So.2d 185, 187 (1965)). There is no factual dispute that these emails were sent and received, and, legally, Stieffel’s attorney had the authority to bind Stieffel to Note 2 and the CSA. As such, there is no question of material fact that Stieffel’s attorney entered into Note 2 and the CSA, resulting in the settlement and release of Note 1. The circuit court was correct in denying Stieffel’s motion for summary judgment on the enforcement of Note 1 by finding that Note 2 and the CSA were binding and *921 served as a valid settlement, release, and accord and satisfaction of Note 1.
II. Due Process
¶ 15. Next, CAL Investments argues that it was denied due process because the claims involving enforcement of Note 2 and the CSA were not raised in Stieffel’s original pleading; therefore, it did not have notice or an opportunity to present any defenses to the enforcement of Note 2 and the CSA. We find this argument unpersuasive.
¶ 16. CAL Investments was the party that initially raised Note 2 and the CSA’s enforceability by affirmatively pleading that the documents acted as a settlement and release or accord and satisfaction of Note 1. Then, at the summary-judgment hearing, Stieffel asked the circuit court
to resolve the motion for summary judgement in favor of [Stieffel] and enter a judgment in the amount of $257, 517.21 or [] in the alternative [] if the [circuit cjourt determines that there exist a genuine issue of material fact [] that [the circuit court] enter a judgment for the amount that [CAL Investments has] confessed [is] due and owing under the terms of [Note 2 and the CSA] ...
(Emphasis added). The circuit court permitted the parties to submit anything additional that was necessary on the issue of whether, if Note 1 was found to be settled and released, the circuit court could enforce Note 2 and the CSA. Clearly, CAL Investments had notice of the claims and an opportunity to be heard on the issue. CAL Investments affirmatively raised the issue on its own and was given an opportunity to provide the circuit court with information regarding the enforceability of Note 2 and the CSA. Instead, it chose not to raise any defenses of usury or uncon-scionability as to the late fees on Note 2 at that time. It represented to the circuit court that Note 2 was a binding obligation that served as valid consideration for the CSA. We cannot see how CAL Investments can claim its due-process rights were violated.
¶ 17. CAL Investments also claims that the circuit court erred in not considering its usury defenses raised in its memorandum in support of its motion for reconsideration. This memorandum was filed more than ten days after the circuit court entered its order and judgment; thus, the circuit court was correct that the issue of usury in regard to Note 2 was not appropriately before the circuit court for review. Ultimately, CAL Investments had notice that enforcement of Note 2 and the CSA was an issue, and the circuit court gave both parties sufficient opportunity to address the enforceability issue, including any possible defenses; therefore, there is no error.
 ¶ 18. Additionally, we conclude that the doctrine of judicial estoppel prevents CAL Investments from arguing that the CSA and Note 2 are now unenforceable. The purpose of the doctrine of judicial estoppel is to ensure “orderliness, regularity!,] and expedition of litigation[.]” Great S. Box Co. of Miss. v. Barrett, 231 Miss. 101, 112, 94 So.2d 912, 916 (1957). Over a decade ago, the United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), discussed the historical roots and purpose of the doctrine of judicial estoppel. It recognized that “circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,” but several factors typically inform the process: (1) the “later position must be ‘clearly inconsistent’ with [the party’s] earlier position,” (2) the party must have persuaded a court to accept the earlier position, and (3) the party “would derive an unfair advantage or impose an *922 unfair detriment on the opposing party if not estopped.” Id. at 750-51, 121 S.Ct. 1808 (internal citations omitted). The Supreme Court quoted with approval language from a Third Circuit case that the doctrine prohibits litigants from playing “fast and loose with the courts.” Id. at 750, 121 S.Ct. 1808 (quoting Scarano v. Cent. R. Co., 203 F.2d 510, 513 (3d Cir.1953)). The doctrine states, “a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits.” Scarano, 203 F.2d at 513. CAL Investments raised as affirmative defenses to the enforcement of Note 1 that Note 2 and the CSA acted as settlement and release of claims regarding Note 1. The circuit court agreed with this argument and denied summary judgment to Stieffel on Note 1 and enforced Note 2 and the CSA. CAL Investments cannot now argue that Note 2 and the CSA are unenforceable. Moreover, it appears the applicable three-year statute of limitations has run, effectively preventing Stieffel from attempting to collect on Note 2 by way of a new suit. To allow CAL Investments to now argue that Note 2 and the CSA are unenforceable, a position inconsistent with its affirmative defenses, would thwart the purpose and logic of the doctrine of judicial estoppel.
¶ 19. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., AND JAMES, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.

. Rodwell, Easter, and Tomasello signed all the discussed documents individually and on behalf of CAL Investments LLC. Therefore, in this opinion, we will collectively refer to the appellants as CAL Investments.